UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAN CERJANEC, on behalf
of himself and all others similarly situated,

Plaintiffs,

vs

FCA US LLC,

Defendant.

Case No.

Hon.

**CLASS ACTION**

---

AKEEL & VALENTINE, PLC
Shereef H. Akeel (P54345)
Hasan Kaakarli (P81099)
Attorneys for Plaintiff
888 W. Big Beaver Road, Suite 910
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com

---

### PLAINTIFF'S CLASS ACTION COMPLAINT

**NOW COME** Plaintiffs, DAN CERJANEC, ("Plaintiff" or "Class Representative"), individually and on behalf of all others similarly situated, by and through his attorneys, AKEEL & VALENTINE, PLC, and states as follows:

### NATURE OF CLAIM

1. This is a class action for declaratory and injunctive relief against Defendant, Fiat Chrysler Automobiles (hereinafter referred to as "FCA"), to

redress the violations and threatened violations of the rights of Plaintiffs and the class he represents (collectively hereinafter "Class" or "Plaintiff Class") under the Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 et seq.

2. Plaintiff Class also seek compensatory damages against Defendant to redress the violations and threatened violations of the rights of Plaintiff Class under ELCRA.

3. As Class Representatives, DAN CERJANEC, respectively, seeks to represent salaried, non-union employees ages 55 and above who have been subjected to a systematic, adverse and disparate impact, pattern and practice of age discrimination described in this Complaint, stemming from specific evaluations and employee rating policies, practices, and/or procedures which had the direct negative correlation on compensation, bonuses, promotions, privileges, benefits, including medical and pension, and other terms and conditions of his employment.

## JURISDICTION AND VENUE

4. Plaintiff, DAN CERJANEC, age 59, was an employee of Defendant at all relevant times herein, and is a resident of the State of Michigan.

5. Plaintiff, DAN CERJANEC, began employment with Defendant on or around June 1994 and had been employed with Defendant until February 21, 2017, when he was terminated.

6. Plaintiff, DAN CERJANEC, has a Master's Degree in Global Finance, and had a job classification of Mid-Level Professional.

7. Defendant, FCA, is a Foreign Limited Liability Company incorporated in Delaware.

8. FCA has sufficient minimum contacts in Michigan, or otherwise has purposely availed itself of the markets within Michigan, through the promotion, sale, marketing, and distribution of its vehicles, in addition to having its principle place of business or headquarters in Michigan to render the exercise of jurisdiction by this Honorable Court proper and necessary.

9. This Honorable Court has jurisdiction over Plaintiff's claims based on diversity jurisdiction, 28 U.S.C. § 1332(d).

10. Venue is proper in this Honorable Court as Defendant conducts business within the Eastern District of Michigan and are subject to personal jurisdiction within the Eastern District of Michigan and a substantial part of the events giving rise to the claims alleged occurred in the Eastern District of Michigan, *see* 29 U.S.C. § 1391(b).

## APPLICABLE FACTS

11. Plaintiff incorporates by reference the foregoing paragraphs, as though fully set forth herein.

12. Defendant FCA has a compensation job category payment structure ("Compensation Category") defined in the following order, from top to bottom: Senior Leadership, Director, Senior Manager, Senior Professional, Mid-Level Professional, and Professional.

13. Plaintiff Class was subject to the Compensation Category, and Plaintiff Cerjanec is member of Plaintiff Class.

14. Plaintiff Cerjanec was a Mid-Level Professional.

15. Defendant FCA's Diversity Manager was tasked with company-wide responsibilities, which included improving diversity representation of minorities, implementing and promoting a culture of diversity, tolerance and inclusion, and increasing accountability for diversity, inclusion and respect.

16. Defendant's Diversity Manager assumed the duties in developing a program that would be effective in recruiting, developing, retaining, and promoting a diverse workforce for Defendant FCA.

17. Diversity Manager's duties also included identifying performance and leadership gaps of diverse populations, which include gender, all races, ages, and ethnicities.

18. In implementing an effective employee retention program, Defendant's Diversity Manager also monitored, analyzed, and engaged in a compensation analysis (historic and current) in order to highlight potential

4

discrepancies in pay equity and advancement opportunities for employees of all races, ages, ethnicities, and gender.

19. Defendant's Diversity Manager also undertook performance analysis in order to detect and highlight inequities or discrepancies in ratings, goals, and evaluations.

20. In further performance of as Diversity Manager, and upon engaging in a compensation analysis to detect discrepancies in pay equity among the salaried, non-union workforce, Defendant's Diversity Manager was assigned the task to implement initiatives that address inequities in compensation, promotion opportunities, and other benefits with the goal of developing, retaining, and providing equal opportunities for advancement for a diverse workforce.

21. Importantly, Defendant's Diversity Manager learned and observed that when Defendant FCA's employees are rated, evaluated, and given scores, they are subjected generally to a two-step process ("Evaluation Process"). First, employees are rated by their direct supervisor as to performance and given an initial score. Then, there is a calibration process where the score is discussed among management, resulting in the score being either: raised, maintained, or downgraded.

22. Furthermore, employees are rated within a 9-Box Score, where a rating of 1, 2, and 4 is identified by a red color (as in danger); a rating of 3, 5, and

5

7 is identified by a yellow color (as in warning), and a rating of 6, 8, and 9 is identified by a green color (as in effective and high performer).

23. An employee who scores below a 5 on the 9-Box Score can result in that employee being place on a Performance Improvement Program, otherwise known as a PIP, or termination.

24. During the calibration process, photos of the employees who are being evaluated are displayed and/or used by the managers, most of whom do not regularly, if at all, work with the employee they are evaluating, when adjusting employees' rating scores referenced above.

25. During the calibration process, employee numbers are also identified for each employee, which reflect generally how long an employee has been with Defendant.

26. In other words, Defendant's employee identification system ("Employee ID") is designed in way that newer employees with Defendant are assigned a chronologically sequenced number which would be a larger number than the employees who have been employed with Defendant longer.

27. During the calibration process, rating scores of employees are then adjusted pursuant to a recommended distribution curve, or forced distribution, which requires management to arbitrarily and subjectively rate a certain number, or percentage, of employees at scores either 5 or below, regardless of performance.

6

28. And as part of the Evaluation Process, the higher the score, the higher the bonuses and additional pay awarded, in addition to increases in advancement opportunities.

29. Bonus-based ratings also increased the higher up the hierarchy an employee reaches. For example, a Senior Professional's rating of 6/10 would net a certain bonus, whereas a Senior Manager's rating of 6/10 would net a bigger bonus.

30. In the course of performing their tasks, Defendant's Diversity Manager detected, observed, and analyzed on a company-wide basis that salaried, non-union employees under the age of 55 with a job classification of Senior Manager to Professional, and subject to the Evaluation Process, were being treated far more favorably overall, as to their compensation, ratings, advancement opportunities, terms, and conditions than salaried, non-union employees ages 55 and older, including the Class Representatives.

31. In fact, Defendant's Diversity Manager observed that salaried, non-union employees ages 55 and older that were subject to the Evaluation Process were being rated with lower scores, at 5 or below, at a disproportionate and alarming rate than salaried, non-union employees under the age of 55.

32. Indeed, Defendant's Diversity Manager also observed that in comparison to salaried, non-union employees under the age of 55 – salaried, non-

7

union employees ages 55 and older of a Senior Manager category to Professional, were given lower overall ratings and evaluations of 5 and below at an alarmingly disproportionate rate, thus adversely impacting advancement opportunities and increases in pay, among other losses.

33. As a result of the two-step Evaluation Process, in 2014 and 2015, the Plaintiff Class scores were disproportionately lower following the calibration process, in comparison to employees under the age of 55.

34. Indeed, for just years 2014 and 2015, and as a result of the Evaluation Process and forced distribution policy, Plaintiff Class was disproportionately given lower scores of 5 and below.

35. And, for years 2014, 2015, and 2016, Plaintiff Cerjanec was given a rating of 5, 4, and 2, respectively.

36. In fact, after receiving a 2 for the 2016 evaluation year, on or about February 21, 2017, Plaintiff Cerjanec was terminated and escorted out of the building in front of his peers.

37. Defendant's Diversity Manager had reported to management that salaried, non-union employees ages 55 and older were being treated less favorably, adversely affected, and/or discriminated against in terms of compensation and the terms and conditions of their employment.

38. Defendant's Diversity Manager also reported to management that salaried, non-union employees ages 55 and older were being treated less favorably, adversely affected, and/or discriminated against in receiving lower ratings or evaluations on a company-wide basis than salaried, non-union, employees under the age of 55.

39. As a result of her reporting the disparate impact that has afflicted employees, rather than addressing the matter properly, Defendant instead retaliated against their Diversity Manager for making such a report and/or opposing such company discriminatory practices and/or policies by, among other things: 1) being accused of not performing certain duties as expected; 2) placed under investigation for reporting certain discriminatory acts; and 3) ostracized and essentially excommunicated from her colleagues and upper management.

## CLASS ACTION ALLEGATIONS

40. Plaintiff incorporates by reference the foregoing paragraphs, as though fully set forth herein.

41. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) (b)(3), individually, and on the behalf of:

   a. All salaried, non-union employees ages 55 and older included in the Compensation Category only from the Senior Manager job category to the Professional category, employed or formerly employed by Defendant, that were subjected to the Evaluation Process and received scores of 5 or below for evaluation of the years 2014, 2015, and/or

9

2016. Plaintiffs reserve the right to amend this definition as necessary.

42. Defendant's practice and/or policy regarding the evaluation and rating of salaried, non-union employees, which includes: 1) a subjective "calibration" element of rating employees, 2) use of photographs to identify Plaintiffs, including their age, to management when deciding which rating score to issue, 3) an Employee ID number, where it sequential number indicates the approximate number of years an employee has been with the company, and 4) forced or recommended distribution, causing certain percentage of employees to receive lower scores; subjected company-wide salaried, non-union employees ages 55 and older to less favorable and disproportionate adverse ratings and evaluations in comparison to salaried, non-union employees under the age of 55, resulting in reduced compensation, chances of promotion, and other terms, conditions, and benefits, including loss of benefits and increased medical costs.

43. In other words, Plaintiff Class, covering employees 55 and above, who were of the Professional level position to the Senior Manager level position, were more adversely and disproportionately affected by Defendant's existing subjective Evaluation Process, which included the use of photographs and an Employee ID number, to identify members of the Class, including their ages.

44. As a result of Defendant's practice and policy of discriminating against employees ages 55 and older, Plaintiff Class has been denied similar employment benefits and opportunities afforded to employees under the age of 55.

45. Such disparate impact affects Plaintiff Class in a number of ways, including, but not limited to, bonuses for a given year, additional compensation, other privileges and benefits, increase in medical costs, loss in pension benefits, and/or future advancement opportunities.

46. Plaintiff seeks to maintain this class, pursuant to Federal Rules of Civil Procedure 23, on the issues of whether Defendant engaged in unlawful discrimination and whether Defendant should be enjoined from continuing its discriminatory policies.

47. The Class is so numerous that joinder of all members is impracticable; thousands of salaried workers have been subjected to Defendant's performance evaluation system or Evaluation Process.

48. Plaintiff does not know the precise number of the Class, but can easily ascertain this information from Defendant's records.

49. Common questions of fact and law exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.

50. Among the questions of law and fact in common to Plaintiff Class is whether Defendant violated ELCRA by implementing their Evaluation Process in such a manner that resulted in a disparate impact on employees ages 55 and older by among, other things, disproportionately receiving lower pay raises, bonuses, promotional potential, opportunities, and loss of other benefits.

51. In other words, Defendant's Evaluation Process has had a significant disparate impact on qualified employees, including Plaintiff Class.

52. Plaintiffs' claims are typical of the claims of the members of the Class and they are an adequate representative of the Class.

53. Plaintiffs and members of the Class have sustained damages because of Defendant's unlawful activities alleged herein.

54. Plaintiffs have retained counsel, competent and experienced in employment, civil rights, and race discrimination litigation, and intend to prosecute this action vigorously.

55. Plaintiffs seek, for themselves and Plaintiff Class, a declaration that their rights were violated, and a judgment awarding them liquidated damages and attorneys' fees and costs to make them whole for damages they suffered, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

56. Additionally, Plaintiff brings this action on behalf of himself and all salaried, non-union employees ages 55 and older employed by Defendant that received a rating of 5 or below for the years 2014, 2015, and/or 2016 and were subjected to Defendant's employee Evaluation Process, pursuant to Federal Rule of Civil Procedure 23 to remedy violations of Federal law, including 42 U.S.C. § 1981, and Michigan law, including ELCRA, MCL 37.2101 et seq.

## COUNT I

## DISPARATE IMPACT/AGE DISCRIMINATION OF ELCRA, MCL 37.2101 et seq. BY DEFENDANT AGAINST ALL PLAINTIFFS

57. Plaintiff incorporates by reference the foregoing paragraphs, as though fully set forth herein.

58. Plaintiff, and members of Plaintiff Class, are ages 55 and older at all relative timers herein.

59. Plaintiff, and members of Plaintiff Class, was qualified for the positions they held and/or hold with Defendant.

60. Defendant's subjective Evaluation Process policy and/or practice regarding their subjective evaluation system, which include the use of photographs, suggestive Employee ID's, and a forced distribution of low to medium scores policy, has had, and continues to have, a significant disparate impact on non-union, salaried employees ages 55 and older, including Plaintiff and Plaintiff Class.

61. The existing subjective performance evaluation system, which includes the use of photographs and recommended forced distribution, serves no significant business need.

62. Defendant can evaluate its employees with an evaluation tool with less discriminatory impact.

**WHEREFORE,** Plaintiff, individually and on behalf of Plaintiff Class, request this Honorable Court award judgment against Defendant for back pay and related entitled benefits, in whatever amount the jury finds necessary, in addition to punitive or exemplary damages plus costs, interest and attorney fees, as allowed under the Act, plus (1) declaratory relief recognizing that Defendant has unlawfully discriminated against the Class based on their age; (2) injunctive relief prohibiting the consideration of age in evaluations and ending the discriminatory policies described herein; 3) compensatory damages, and (4) an award of costs, interest and attorney fees.

                        Respectfully submitted,

                        AKEEL & VALENTINE, PLC

                        /s/: SHEREEF H. AKEEL
              By:  Shereef H. Akeel (P54345)
                    Hasan Kaakarli (P81099)
                    Attorneys for Plaintiffs
                    888 West Big Beaver Road, Ste. 910
                    Troy, MI 48084
                    (248) 269-9595

DATED: February 27, 2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DAN CERJANEC, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiffs, | Hon. |
| vs | **CLASS ACTION** |
| FCA US LLC, | |
| Defendant. | |

AKEEL & VALENTINE, PLC
Shereef H. Akeel (P54345)
Hasan Kaakarli (P81099)
Attorneys for Plaintiff
888 W. Big Beaver Road, Suite 910
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com

## JURY DEMAND

**NOW COMES** Plaintiff, DAN CERJANEC, on behalf of himself and others similarly situated, and hereby demand a trial by jury in the above-captioned cause of action.

Respectfully submitted,

AKEEL & VALENTINE, PLC

/s/: SHEREEF H. AKEEL

15

By: Shereef H. Akeel (P54345)
Hasan Kaakarli (P81099)
Attorneys for Plaintiffs
888 West Big Beaver Road, Ste. 910
Troy, MI 48084
(248) 269-9595

DATED: February 27, 2017

O:\Cerjanec, Dan\Complaint & Jury Demand 2.doc