## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

DAN CERJANEC, RODRIGO BRAVO, MARK MODLIN, WILLIAM WINFREY, and GLENN LUKAS on behalf of themselves and all others similarly situated,

                    Plaintiffs,

vs.

FCA US LLC,

                    Defendant.

Case No:17-10619

HON. LAURIE J. MICHELSON

**ORAL ARGUMENT REQUESTED**

---

AKEEL & VALENTINE, PLC
Shereef H. Akeel (P54345)
Hasan Kaakarli (P81099)
888 W. Big Beaver Road
Suite 910
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com

PITT, MCGEHEE, PALMER & RIVERS, PC
Michael L. Pitt (P24429)
Megan A. Bonanni (P52079)
Robert W. Palmer (P31704)
Carey S. McGehee (P42318)
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
Tel: 248-398-9800
mpitt@pittlawpc.com

Attorneys for Plaintiffs

MILLER, CANFIELD, PADDOCK & STONE, PLC
Jerome R. Watson (P27082)
M. Misbah Shahid (P73450)
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226
(313) 963-6420
Watson@millercanfield.com
Shahid@millercanfield.com

LITTLER MENDELSON, P.C.
Daniel E. Turner (Ga. Bar No. 719330)
Jacqueline Phipps Polito (NY Bar No. 2582690)
Tasha K. Inegbenebor (Ga. Bar. No. 382905)
3344 Peachtree Road N.E., Suite 1500
Atlanta, GA 30326
(404) 233-0330
dturner@littler.com
*Admitted to the Eastern District of Michigan on June 23, 2011*
jpolito@littler.com
*Admitted to the Eastern District of Michigan in May 18, 2017*
tinegbenebor@littler.com
*Admitted to the Eastern District of Michigan on May 11, 2017*

Attorneys for Defendant

---

# DEFENDANT'S MOTION TO COMPEL ARBITRATION; MOTION TO DISMISS; AND/OR MOTION TO STRIKE CLASS ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

NOW COMES Defendant FCA US LLC ("Defendant"), through its attorneys, Miller, Canfield, Paddock & Stone, P.L.C. and Littler Mendelson, P.C., and in answer to Plaintiffs' First Amended Complaint (Dkt. 4) ("Complaint"), moves this Court to compel arbitration, and/or dismiss the Complaint in its entirety, and/or strike the class allegations in the Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), 12(f), and 23(d)(1)(D).   In support of its Motion, Defendant states as follows:

1.     On March 20, 2017, Plaintiffs filed the Complaint alleging several claims on behalf of themselves and similarly situated individuals against Defendant.

2.     The named plaintiffs are Dan Cerjanec, Rodrigo Bravo, Mark Modlin, William Winfrey, and Glenn Lukas (collectively referred to as "Plaintiffs").

3.     Plaintiffs, on behalf of themselves and all similarly situated individuals, the existence of which Defendant denies, allege that Defendant engaged in disparate impact age discrimination in violation of the Age Discrimination in Employment Act, 20 U.S.C. 621, et seq. ("ADEA") (Count I), and the Michigan Elliott-Larsen Civil Rights Act, M.C.L. 37.2201, et seq. ("ELCRA") (Count IV).

4.     Plaintiffs Cerjanec and Modlin also allege age discrimination arising out of their termination or alleged constructive discharge in violation of the ADEA

(Count II, III) and ELCRA (Count V, VI).

5.    This Court should entirely dismiss Plaintiffs' individual and class allegations in the Complaint (Counts I - VI), based on the following multiple and independent grounds:

    a.    All Plaintiffs entered into a written and binding arbitration agreement, which expressly covers allegations of discrimination and retaliation; thus, all of their claims (Counts I-VI) should be compelled to individual binding arbitration;

    b.    All Plaintiffs fail to assert any facts necessary to support a claim of individual, let alone class-wide, discrimination, requiring dismissal of all claims (Counts I-VI);

    c.    All of Plaintiffs' Fed. R. Civ. P. 23 ADEA claims (Count I) are defective because Rule 23, which applies to class actions, is inapplicable to ADEA claims, which must proceed as a collective action, Plaintiffs failed to exhaust their administrative remedies and Plaintiffs plead legally improper sub-classes;

    d.    Plaintiffs' ADEA and ELCRA class claims (Counts I and IV) must be dismissed for failure to plead requisite disparate impact, failure to allege (as to four Plaintiffs) injury sufficient to establish standing and failure to plead Rule 23 prerequisites

even if Rule 23 applied to ADEA claims (which it does not); and

e.    Plaintiffs Cerjanec's and Lukas' claims in Counts I, II, IV and V are untimely because they were not asserted within the contractually agreed upon limitation period of six months.

6.    Defendant sought concurrence in the relief requested in compliance with Local Rule 7.1, which was not received, thereby making this Motion necessary.

WHEREFORE, for the reasons stated above and discussed in the attached Brief in Support, Defendant respectfully requests that this Court grant its motion and enter an order compelling arbitration, and/or dismissing the Complaint in its entirety, and/or striking the class allegations in the Complaint, with prejudice.

Dated: June 16, 2017                    Respectfully submitted,

/s/ Jerome R. Watson (P27082)
Miller, Canfield, Paddock & Stone, P.L.C.
Attorney for Defendant
150 West Jefferson Ave., Suite 2500
Detroit, Michigan  48226
(313) 963-6420
watson@millercanfield.com

3

Daniel E. Turner (Bar #719330)
dturner@littler.com
Jacqueline Phipps Polito (Bar #2582690)
jpolito@littler.com
Tasha K. Inegbenebor (Bar #382905)
tinegbenebor@littler.com

LITTLER MENDELSON, P.C.
3344 Peachtree Road N.E.
Suite 1500
Atlanta, GA  30326.4803
Phone: 404.233.0330
Fax: 404.233.2361

Attorneys for Defendant
FCA US LLC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

DAN CERJANEC, RODRIGO BRAVO, MARK MODLIN, WILLIAM WINFREY, and GLENN LUKAS on behalf of themselves and all others similarly situated,

                Plaintiffs,

vs.

FCA US LLC,

                Defendant.

Case No:17-10619

HON. LAURIE J. MICHELSON

**ORAL ARGUMENT REQUESTED**

---

AKEEL & VALENTINE, PLC
Shereef H. Akeel (P54345)
Hasan Kaakarli (P81099)
888 W. Big Beaver Road
Suite 910
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com

PITT, MCGEHEE, PALMER & RIVERS, PC
Michael L. Pitt (P24429)
Megan A. Bonanni (P52079)
Robert W. Palmer (P31704)
Carey S. McGehee (P42318)
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
Tel: 248-398-9800
mpitt@pittlawpc.com

Attorneys for Plaintiffs

MILLER, CANFIELD, PADDOCK & STONE, PLC
Jerome R. Watson (P27082)
M. Misbah Shahid (P73450)
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226
(313) 963-6420
Watson@millercanfield.com
Shahid@millercanfield.com

LITTLER MENDELSON, P.C.
Daniel E. Turner (Ga. Bar No. 719330)
Jacqueline Phipps Polito (NY Bar No. 2582690)
Tasha K. Inegbenebor (Ga. Bar. No. 382905)
3344 Peachtree Road N.E., Suite 1500
Atlanta, GA 30326
(404) 233-0330
dturner@littler.com
*Admitted to the Eastern District of Michigan on June 23, 2011*
jpolito@littler.com
*Admitted to the Eastern District of Michigan in May 18, 2017*
tinegbenebor@littler.com
*Admitted to the Eastern District of Michigan on May 11, 2017*

Attorneys for Defendant

# BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION; MOTION TO DISMISS; AND/OR MOTION TO STRIKE CLASS ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF ISSUES PRESENTED............................................................. xii

STATEMENT OF CONTROLLING/MOST APPROPRIATE
AUTHORITY ...........................................................................................xiv

PRELIMINARY STATEMENT ............................................................................1

I.  PLAINTIFFS ARE CONTRACTUALLY BOUND TO ARBITRATE
    THEIR CLAIMS ON AN INDIVIDUAL BASIS ........................................3

    A.  The EDRP Requires Arbitration Of Claims.........................................4

    B.  Each Plaintiff Agreed To Individual Arbitration ................................5

    C.  The FAA And Sixth Circuit Require Enforcement Of The
        EDRP As To All Plaintiffs ..................................................................6

        1.  The EDRP Is Fully Enforceable As To Lukas..........................7

            a.  A Valid Contract To Arbitrate Exists.............................9

            b.  Plaintiff Lukas' Claims Fall Within The
                Arbitration Provision's Scope .........................................9

            c.  Plaintiff Lukas' Federal Statutory Claims Are
                Arbitrable As A Matter Of Law ....................................10

        2.  The EDRP Is Also Fully Enforceable As To The 1995
            EDRP Plaintiffs......................................................................10

    D.  The Court Should Require Plaintiffs To Proceed With
        Arbitration On An Individual Basis ..................................................11

II. PLAINTIFFS FAIL TO STATE A CLAIM OF DISCRIMINATION........13

    A.  Plaintiffs Bravo, Winfrey, And Lukas Fail To Assert Any Facts
        To Support A Claim Of Age Discrimination .....................................13

    B.  Plaintiff Cerjanec Has Asserted No Plausible Claim Of Age
        Discrimination, Requiring Dismissal Of Counts II And V...............14

# TABLE OF CONTENTS
### (CONTINUED)

PAGE

C.    Plaintiff Modlin Failed To Assert A Plausible Claim Of Age Discrimination In Counts III And VI ................................................16

III.    COUNT I (PURPORTED ADEA CLASS CLAIMS) MUST BE DISMISSED BASED ON MULTIPLE PLEADING FAILURES ............18

A.    ADEA Claims Cannot Be Pursued Under Rule 23 ...........................18

B.    Plaintiffs Did Not Timely Exhaust Their Administrative Remedies ........................................................................................19

C.    Plaintiffs' Proposed Subgroup Of Individuals Ages 55 And Older Is Impermissible Under The ADEA.........................................22

IV.    PLAINTIFFS FAIL IN MULTIPLE WAYS TO PROPERLY PLEAD CLASS CLAIMS ...............................................................................24

A.    Plaintiffs Fail To Adequately Allege Disparate Impact....................24

1.    Plaintiffs Neglect To Plead Facts That Could Establish An ADEA Or ELCRA Disparate Impact Claim......................24

2.    Plaintiffs' Disparate Impact Claims Fail Since They Rely On Allegations Of Intentional Discrimination ......................28

B.    Plaintiffs Cerjanec, Bravo, Winfrey, And Lukas Fail To Allege An Injury Sufficient For Standing......................................................30

C.    Rule 23 Prerequisites Are Not Sufficiently Pled As To Plaintiffs' Class Claims In Count I (ADEA) And Count IV (ELCRA) Claim ...............................................................................31

1.    Class Allegations Must Be Stricken When Plaintiffs Fail To Plead Facts Supporting A Plausible Claim ......................31

2.    Plaintiffs' Complaint Overlooks The Supreme Court's Holding In Dukes And Fails To Plead Facts Supporting Rule 23's Commonality And Typicality Requirements .........33

# TABLE OF CONTENTS
### (CONTINUED)

PAGE

V.    THE COURT SHOULD DISMISS PLAINTIFFS CERJANEC'S
AND LUKAS' CLAIMS IN COUNTS I, II, IV AND V TO THE
EXTENT THEY ARE TIME BARRED .......................................................35

    A.    The Time Barred Plaintiffs Agreed That They Must Bring Any
Employment-Related Claims Within 6 Months .................................35

    B.    Michigan Federal And State Courts Have Unanimously
Enforced The Limitation Agreement At Issue ...................................37

    C.    The Time Barred Plaintiffs' Claims Fail...........................................39

VI.    CONCLUSION...........................................................................................40

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
  1999 WL 944505 (S.D.N.Y. Oct. 19, 1999)......................................................24

*Adams v. City of Indianapolis*,
  742 F.3d 720 (7th Cir. 2014) ..........................................................................27

*Agnew v. BASF Corp.*,
  286 F.3d 307 (6th Cir. 2002) ...........................................................................17

*Aldridge v. City of Memphis*,
  404 F. App'x 29 (6th Cir. 2010) .......................................................................25

*AlixPartners, LLP v. Brewington*,
  836 F.3d 543 (6th Cir. 2016) ...........................................................................13

*American Express Co. v. Italian Colors Restaurant*,
  133 S. Ct. 2304 (2013).................................................................................11, 12

*Amini v. Oberlin Coll.*,
  259 F.3d 493 (6th Cir. 2001) ...........................................................................21

*Arnold v. Arnold Corp.*,
  920 F.2d 1269 (6th Cir. 1990) .........................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................13, 14, 34

*AT&T Mobility, LLC v. Concepcion*,
  563 U.S. 333 (2011)......................................................................................6, 11

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
  528 F.3d 426 (6th Cir. 2008) ...........................................................................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................15, 34

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*Blum v. Yaretsky*,
　457 U.S. 991 (1982)...............................................................30

*Brown v. Ameriprise Financial Services, Inc.*,
　707 F. Supp.2d 971 (D. Minn. 2010)...................................21

*Butcher v. Gerber Prod. Co.*,
　88 F. Supp. 2d 788 (W.D. Mich. 2000) ................................18

*Circuit City Stores, Inc. v. Adams*,
　532 U.S. 105 (2001)...............................................................9

*Clark v. DaimlerChrysler Corp.*,
　706 N.W.2d 471 (Mich. Ct. App. 2005)..............................38

*Costa v. Daimler Chrysler Corp.*,
　2004 WL 1224915 (Mich. Ct. App. June 3, 2004).............38

*Cottrell v. Club Demonstration Servs.*,
　2007 WL 2413070 (E.D. Mich. Aug. 2, 2007)...................10

*Dallas v. Alcatel-Lucent USA, Inc.*,
　2012 WL 424878 (E.D. Mich. Feb. 9, 2012).......................21

*Davis v. Cintas Corp.*,
　717 F.3d 476 (6th Cir. 2013) ......................................25, 27

*Davis v. Landscape Forms, Inc.*,
　640 F. App'x 445 (6th Cir. 2016) ........................................37

*Dean Witter Reynolds Inc. v. Byrd*,
　470 U.S. 213 (1985)...............................................................7

*Debro v. French*,
　2017 WL 927622 (E.D. Mich. Feb. 16, 2017)...................10

*Dedivanaj v. DaimlerChrysler Corp.*,
　2007 WL 1791709 (Mich. Ct. App. June 21, 2007)...........38

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Direct TV, Inc. v. Imburgia*,
  136 S. Ct. 463 (2015)........................................................................11

*E.E.O.C. v. City of Indep., Mo*,
  2005 WL 2898021 (W.D. Mo. Oct. 31, 2005) ..................................23

*EEOC v. Joe's Stone Crab, Inc.*,
  220 F.3d 1263 (11th Cir. 2000) ...................................................25, 27

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002).............................................................................9

*Flatt v. Elec. Research Mfg. Corp.*,
  103 F.3d 129 (6th Cir. 1996) ............................................................29

*Geiger v. Tower Automotive*,
  579 F.3d 614 (6th Cir. 2009) ............................................................26

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)...........................................................................33

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991).......................................................................10, 12

*Grant v. Metro Gov't. of Nashville*,
  446 F. App'x 737 (6th Cir. 2011) .....................................................27

*Henry v. Abbott Labs.*,
  651 F. App'x 494 (6th Cir. 2016) .....................................................17

*Hipp v. Liberty Nat. Life Ins. Co.*,
  252 F.3d 1208 (11th Cir. 2001) ........................................................18

*Hoover v. Timken Co.*,
  30 F. App'x 511 (6th Cir. 2002) .......................................................19

*Howell v. Farris*,
  655 F. App'x 349 (6th Cir. 2016) .....................................................39

# TABLE OF AUTHORITIES
### (CONTINUED)

**PAGE**

*Howlett v. Holiday Inns., Inc.*,
  49 F.3d 189 (6th Cir. 1995) ...............................................................20

*Huffman v. Hilltop Cos., LLC*,
  747 F.3d 391 (6th Cir. 2014) ............................................................13

*Hurtt v. Int'l Servs., Inc.*,
  627 F. App'x 414 (6th Cir. 2015) ......................................................16

*Johnson v. Metro. Gov. of Nashville*,
  502 F. App'x 523 (6th Cir. 2012)......................................................29

*Katoula v. Detroit Entm't LLC*,
  2012 WL 6088325 (E.D. Mich. Dec. 6, 2012) ..................................39

*King v. Gen. Elec. Co.*,
  960 F.2d 617 (7th Cir. 1992) ............................................................18

*Krusinski v. DaimlerChrysler Corp.*,
  2004 WL 315171 (Mich. Ct. App. 2004) .......................................8, 38

*LaChapelle v. Owens-Illinois, Inc.*,
  513 F.2d 286 (5th Cir. 1975) ............................................................18

*Laster v. City of Kalamazoo*,
  746 F.3d 714 (6th Cir. 2014) ............................................................17

*Laws v. HealthSouth N. Ky. Rehab. Hosp. Ltd. P'ship*,
  508 F. App'x 404 (6th Cir. 2012) ......................................................16

*Lewis v. Detroit Pub. Schs.*,
  2013 WL 5785776 (E.D. Mich. Oct. 28, 2013)..................................15

*Lewis v. Detroit Pub. Schs.*,
  2013 WL 5785781 (E.D. Mich. Sept. 23, 2013) ..........................14, 15

*Lusardi v. Lechner*,
  855 F.2d 1062 (3d Cir. 1988) ...........................................................18

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Marquis v. Tecumseh Prods. Co.*,
  206 F.R.D. 132 (E.D. Mich. 2002) ....................................................20

*McGill v. Meijer, Inc.*,
  2011 WL 1166895 (W.D. Mich. March 28, 2011)........................................9, 11

*McKnight v. Gates*,
  282 F. App'x 394 (6th Cir. 2008) .....................................................19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)........................................................................9

*Orta v. DaimlerChrysler*,
  Case No. 02-0018, Macomb County Circuit Court, July 15, 2002
  Order ..................................................................................8

*Pellow v. Daimler Chrysler Servs. N.A., LLC*,
  2006 WL 2540947 (E.D. Mich. Aug. 31, 2006)..........................................8

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) ............................................................32

*Potts v. United Parcel Serv., Inc.*,
  2008 WL 3884370 (N.D. Ill. May 9, 2008)............................................31

*Reed Elsevier, Inc. v. Crockett*,
  734 F.3d 594 (6th Cir. 2013) ............................................................12

*Rory v. Cont'l Ins. Co.*,
  703 N.W.2d 23 (Mich. 2005)...........................................................37

*Rumburg v. Sec'y of the Army*,
  No 10-11670, 2011 WL 1595067 (E.D. Mich. Apr. 27, 2011) ..........................19

*Schechner v. KPIX-TV*,
  2011 WL 109144 (N.D. Cal. Jan. 13, 2011).........................................24

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*Schilling v. Kenton Cnty.*,
    2011 WL 293759 (E.D. Ky. Jan. 27, 2011)....................................................32, 34

*Singal v. Gen. Motors Corp.*,
    447 N.W.2d 152 (1989) ....................................................................................28

*Smith v. BT Conferencing, Inc.*,
    2013 WL 5937313 (S.D. Ohio Nov. 5, 2013) .............................................12, 24

*Smith v. City of Jackson*,
    544 U.S. 228 (2005)..........................................................................................25

*Smith v. Tennessee Valley Authority*,
    924 F.2d 1059 (6th Cir. 1991) .........................................................................23

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)......................................................................................30

*Steward v. New Chrysler*,
    415 F. App'x 632 (6th Cir. 2011) .....................................................................38

*Stout v. J.D. Byrider*,
    228 F. 3d 709 (6th Cir. 2000) ..................................................................7, 9, 10

*Texas Dep't of Hous. and Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
    135 S. Ct. 2507 (2015)......................................................................................26

*Thurman v. DaimlerChrysler, Inc.*,
    397 F.3d 352 (6th Cir. 2004) ......................................................................37, 38

*Underwood v. Daimler Chrysler Corp.*,
    2002 WL 31953849 (Mich. Ct. App. Dec. 13, 2002)........................................38

*Waller v. Daimler Chrysler Corp.*,
    391 F. Supp. 2d 594 (E.D. Mich. 2005) .........................................................8, 9

# TABLE OF AUTHORITIES
## (CONTINUED)

**PAGE**

*Walmart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..........................................................................2, 33, 34, 35

*Wards Cove Packing Co., Inc. v. Atonio*,
  490 U.S. 642 (1989)......................................................................................25

*White v. Am. Axle & Manuf., Inc.*,
  2006 WL 335710 (E.D. Mich. Feb. 14, 2006).....................................................27

*Williams, et. al v. FCA US LLC*,
  Case No. 17-10097 ..........................................................................................1

*Winchester v. Wal-Mart Stores Inc.*,
  2015 WL 3903673 (W.D. Ky. June 25, 2015) ...................................................22

*Yeargin v. Chrysler Grp., LLC*,
  2013 WL 593474 (E.D. Mich. Feb. 15, 2013).....................................................38

*Younis v. Pinnacle Airlines, Inc.*,
  610 F.3d 359 (6th Cir. 2010) ...........................................................................19

*Zawada v. Uber Tech., Inc.*,
  2016 WL 7439198 (E.D. Mich. Dec. 27, 2016) ................................................12

**Statutes**

9 U.S.C. § 2.....................................................................................................7

9 U.S.C. § 3...................................................................................................12

9 U.S.C. § 4..........................................................................................6, 7, 11

29 U.S.C. § 216(b) ........................................................................................18

29 U.S.C. § 631 (a) .......................................................................................22

42 U.S.C. §1981.................................................................................24, 37, 38

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

42 U.S.C. §2000e .................................................................................24

42 U.S.C. § 2000e-5(e) .........................................................................19

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...........................................................13, 15, 32, 35

Fed. R. Civ. P. 12(f) ..............................................................................31

Fed. R. Civ. P. 23 .........................................................................*passim*

Fed. R. Civ. P. 23(a) ..................................................................32, 33, 34

Fed. R. Civ. P. 23(b) ........................................................................32, 35

Fed. R. Civ. P. 23(c) ..............................................................................31

Fed. R. Civ. P. 23(d) ..............................................................................31

## STATEMENT OF ISSUES PRESENTED

1.      Whether this Court should dismiss Plaintiffs' individual and class allegations in the First Amended Complaint ("Complaint") (Dkt. 4) (Counts I - VI) in their entirety, based on the following multiple and independent grounds:

> A.      All Plaintiffs entered into a written and binding arbitration agreement, which expressly covers allegations of discrimination and retaliation; thus, all of their claims (Counts I-VI) should be compelled to individual binding arbitration;

> B.      All Plaintiffs fail to assert any facts necessary to support a claim of individual, let alone class-wide, discrimination, requiring dismissal of all claims (Counts I-VI);

> C.      All of Plaintiffs' Fed. R. Civ. P. 23 Age Discrimination in Employment Act ("ADEA") claims (Count I) are defective because Rule 23 is inapplicable to ADEA claims and ADEA claims must proceed as a collective action, Plaintiffs failed to exhaust their administrative remedies and Plaintiffs plead legally improper sub-classes;

> D.      Plaintiffs' ADEA and ELCRA class claims (Counts I and IV) must be dismissed for failure to plead requisite disparate impact, failure to allege (as to four Plaintiffs) injury sufficient

to establish standing and failure to plead Rule 23 prerequisites even if Rule 23 applied to ADEA claims (which it does not); and

E.    Plaintiffs Cerjanec's and Lukas' claims in Counts I, II, IV and V are untimely because they were not asserted within the contractually agreed upon limitation period of six months.

**STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY**

The controlling or most appropriate authority for the relief sought in this Motion includes:

- *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013)

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

- *AT&T Mobility LLC v. Concepcion*, 533 U.S. 333 (2011)

- *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

- *Brown v. Ameriprise Fin. Servs., Inc.*, 707 F.Supp.2d 971 (D. Minn. 2010)

- *Davis v. Cintas Corp.*, 717 F.3d 476 (6th Cir. 2013)

- Federal Arbitration Act, 9 U.S.C. §§ 1-4 *et. seq*.

- *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975)

- *Pellow v. Daimler Chrysler Servs. N.A., LLC*, 2006 WL 2540947 (E.D. Mich. Aug. 31, 2006)

- *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23 (Mich. 2005)

- *Smith v. City of Jackson*, 544 U.S. 228 (2005)

- *Smith v. Tenn. Valley Auth.*, 924 F.2d 1059 (6th Cir. 1991).

- *Steward v. New Chrysler*, 415 F. App'x 632 (6th Cir. 2011)

- *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d= 352 (6th Cir. 2004)

- *Waller v. Daimler Chrysler Corp.*, 391 F. Supp. 2d 594 (E.D. Mich. 2005)

- *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

## PRELIMINARY STATEMENT

Plaintiffs' Complaint is both procedurally and substantively defective on a number of different and independent grounds. Plaintiffs assert six Counts, two of which are asserted on a class basis by all five Plaintiffs; two of which are specific to Plaintiff Cerjanec; and two of which are specific to Plaintiff Modlin. As described below, there are grounds particular to each Plaintiff requiring their claims be dismissed. Moreover, and as a fundamental matter, the underlying theory of the Complaint's class Counts is defective. Plaintiffs purport to challenge on a "disparate impact" theory FCA US LLC's[1] Performance and Leadership Management ("PLM") process[2], yet acknowledge in the Complaint that the process involves multiple components, including what the Complaint refers to as a "subjective 'calibration'" process. Complaint ¶ 45. The Supreme Court held in

---

[1] Defendant FCA US LCC ("FCA US") was previously named Chrysler Group LLC. *See* United States Securities and Exchange Commission, Form 8-K, FCA US LLC (filing date 2014-12-16). On June 10, 2009, Chrysler Group LLC, a newly-formed limited liability company, purchased certain assets of Chrysler LLC (subsequently known as Old Carco LLC) and its 24 affiliated debtors, which on April 30, 2009 had filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. *See* Master Transaction Agreement dated April 30, 2009. Chrysler LLC was previously known as DaimlerChrysler Company LLC, which was previously DaimlerChrysler Corporation, which was previously known as Chrysler Corporation, and shall be referred to herein, collectively, as "FCA US" or the "Company".

[2] In *Williams, et. al v. FCA US LLC*, Case No. 17-10097, pending before this Court, Plaintiffs' counsel represents a separate group of individuals who claim that the PLM process has a disparate impact on African Americans. Defendant has moved to dismiss those claims on similar grounds to those set forth herein.

*Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011), that plaintiffs are precluded from creating class claims out of the subjective judgments of different managers in different locations about different employees. Accordingly, Plaintiffs' Complaint fails to provide the required "glue" binding different individuals' claims into a legitimate class claim. *Id.* at 338.

As detailed below, the Complaint should be dismissed for numerous independent reasons:

- All Plaintiffs are parties to arbitration commitments and thus the entirety of the Complaint should be dismissed and they should be compelled to arbitrate their claims on an individual basis;

- All of the Plaintiffs fail adequately to plead a claim of unlawful discrimination in all Counts as to themselves;

- Plaintiffs' ADEA class claims (Count I) are barred because (a) they improperly invoke Fed. R. Civ. P. 23, which is not available for ADEA claims as ADEA claims must proceed as a collective action, (b) Plaintiffs failed to exhaust their administrative remedies, and (c) Plaintiffs' proposed sub-classes for employees ages 55 or older are impermissible under the ADEA;

- Plaintiffs' class counts (Counts I and IV) must be dismissed in their entirety for a variety of pleading failures, including failure to plead disparate impact, failure to allege injury sufficient to establish standing and failure to plead the prerequisites of Fed. R. Civ. P. 23 assuming Rule 23 applies to ADEA claims (which it does not); and

- Two of the five Plaintiffs failed to assert their claims within a limitations period they agreed to at the time they were hired and which courts in this Circuit have explicitly and repeatedly upheld.

For ease of reference, the below chart identifies which of the five named Plaintiffs' claims fall within each of the procedural and substantive failures of the

Complaint:

**SUMMARY OF COVERAGE OF DEFENDANT'S ARGUMENTS IN MOTION TO DISMISS PLAINTIFFS' DEFECTIVE CLAIMS**

| NAMED PLAINTIFF | CLAIMS ARE SUBJECT TO ARBITRATION (COUNTS I-VI) | FAILURE TO ALLEGE DISCRIMINATION (COUNTS I-III) | ADEA CLASS CLAIMS FAIL AS A MATTER OF LAW FOR VARYING REASONS (COUNT I) | NO FACTS TO SUPPORT ALLEGATIONS OF DISPARATE IMPACT (COUNTS I AND IV) | DISPARATE IMPACT CLAIMS FAIL FOR MULTIPLE REASONS (COUNTS I AND IV) | CLAIMS ARE TIME BARRED BY CONTRACT (COUNTS I, II, IV AND V) |
|---|---|---|---|---|---|---|
| Dan Cerjanec | X | X | X | X | X | X |
| Rodrigo Bravo | X | X | X | X | X | |
| Mark Modlin | X | X | X | X | | |
| William Winfrey | X | X | X | X | X | |
| Glenn Lukas | X | X | X | X | X | X |

## I.    PLAINTIFFS ARE CONTRACTUALLY BOUND TO ARBITRATE THEIR CLAIMS ON AN INDIVIDUAL BASIS.

As detailed below, Plaintiff Lukas expressly agreed in writing to be bound by the Company's Employee Dispute Resolution Process ("EDRP") as a condition of his employment.  *See* D. Williams Decl. ¶¶ 6-17.[3]   Additionally, Plaintiffs Cerjanec, Bravo, Modlin, and Winfrey ("1995 EDRP Plaintiffs"), who began employment before the EDRP's adoption, also agreed to be bound by the EDRP by

---

[3] The Declaration of Dorothy M. Williams, sworn to on June 16, 2017, submitted herewith, shall be referenced as "D. Williams Decl., [Exhibit No., Paragraph No.]."

continuing their employment after receiving notice of the EDRP's implementation on June 1, 1995 (the "1995 EDRP"). *Id.* at ¶¶ 10-16; Hortop Decl. ¶¶ 4-7.[4] The EDRP explicitly states that employment discrimination and retaliation claims such as those in Plaintiffs' Complaint must be brought in arbitration. D. Williams Decl. ¶¶ 19-21, at Ex. 1-E. Accordingly, all Plaintiffs should be compelled to pursue their claims contained in Counts I-VI in arbitration, not this Court, on an individual basis and not as a class.

### A.     The EDRP Requires Arbitration Of Claims.

The EDRP provides for arbitration on an individual basis of "Covered Disputes" brought by employees who are parties to the program. *See* D. Williams Decl., Ex. 1-E at p. 1. The definition of Covered Disputes explicitly includes claims of "discrimination based upon . . . age" (*i.e.*, "Covered Disputes"), thus encompassing all of Plaintiffs' claims. *Id.* It further expressly provides that any claims must be brought only in arbitration and on an individual basis:

> ***EXCLUSIVE   REMEDY   AND   INDIVIDUAL   NATURE   OF COVERED CLAIMS***
>
> The EDRP provides the **exclusive, final and binding method to resolve Covered Disputes**. The scope of this EDRP extends to all Covered Disputes whether based on federal, state or local law.
>
> **Covered Disputes under the EDRP must be brought on an individual basis**. Neither [the Company] nor any employee may

---

[4] The Declaration of Kenneth C. Hortop, sworn to on June 15, 2017, submitted herewith, shall be referenced as "Hortop Decl., [Exhibit No., Paragraph No.]."

submit a class, collective, or representative action for resolution under the EDRP.  To the maximum extent permitted by law, and except where expressly prohibited by law, arbitration on an individual basis pursuant to the EDRP is the exclusive remedy for any Covered Dispute that may be brought on a class, collective, or representative action basis.  Accordingly, **an employee may not participate as a class or collective action representative or as a member of any class, collective, or representative action**, and will not be entitled to recovery from a class, collective, or representative action in any forum.

*Id.* at Ex. 1-E, p.3 (emphasis added).  Additionally, the "EDRP Arbitration Procedure" (attached to the EDRP) provides:  the "EDRP and proceedings under it will be governed by the [FAA] and any applicable state arbitration statute."  *Id.* at Ex. 1-E, p.10.

###### B.    Each Plaintiff Agreed To Individual Arbitration.

On January 12, 1999, Lukas completed an application for employment with the Company.  *See* D. Williams Decl. ¶ 6.  As part of his application, Lukas signed an acknowledgment that he agreed to be bound by and comply with the EDRP.  *Id.* Lukas accepted a position with the Company and remains employed.  *Id.*; Compl. ¶ 13.

Cerjanec applied for employment with the Company around June 1994, while Bravo applied in 1985, Modlin applied in June 1988 and began working in August 1988, and Winfrey applied in April 1984 and began working in August 1984 (Compl. ¶¶ 5, 7, 9, 11).  *See* D. Williams Decl. ¶¶ 8-16, Exs. 1-B, 1-C, and 1-D.  In their employment applications, Cerjanec, Bravo, Modlin and Winfrey agreed

that in the event they were hired, they would comply with all Company orders, rules and regulations. *Id.* All four were offered employment, which they accepted. *Id.*

On May 15, 1995, all non-bargaining unit employees, including the 1995 EDRP Plaintiffs, were notified that, effective June 1, 1995, the Company was introducing the EDRP and that the 1995 EDRP "govern(s) all future legal disputes between you and Chrysler," and provides for "final and binding arbitration" of covered employment-related disputes. Hortop Decl. ¶¶ 4, 6-7, Exs. 2-A, 2-B, 2-C. The 1995 EDRP similarly provides that it is the "exclusive, final and binding method" to resolve "all legal issues relating to claims of . . . [d]emotion (a Salary Band reduction)," among other things, and also advises employees that it "extends to all eligible disputes whether based on federal, state or local law including . . . **discrimination and retaliation claims**." *Id.* (emphasis added). The 1995 EDRP Plaintiffs remained employed after receiving notice of the EDRP's implementation. *See* D. Williams Decl. ¶¶ 8-16.

### C.    The FAA And Sixth Circuit Require Enforcement Of The EDRP As To All Plaintiffs.

As the Supreme Court affirmed in *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011), the Federal Arbitration Act ("FAA") declares a liberal policy favoring enforcement of arbitration agreements. The FAA provides that written agreements to arbitrate controversies in any "contract evidencing a transaction

6

involving commerce" shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA requires a federal court to order parties to proceed to arbitration if there has been a failure, neglect, or refusal of any party to honor an agreement to arbitrate. *Id.* at § 4. These provisions are mandatory: "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The Sixth Circuit utilizes a four-part test to determine whether arbitration should be compelled under the FAA: (1) whether the parties agreed to arbitrate; (2) whether the scope of the agreement covers the dispute; (3) if federal statutory claims are asserted, whether Congress intended those claims to be non-arbitrable; and, (4) if only some claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration. *See Stout v. J.D. Byrider*, 228 F. 3d 709, 714 (6th Cir. 2000). The first three parts of this test are satisfied and the fourth part is inapplicable because all of Plaintiffs' claims are subject to arbitration.

### 1.    The EDRP Is Fully Enforceable As To Lukas.

Judges of this Court have already held on two separate occasions that the EDRP must be enforced under the FAA when an employee agrees to arbitration in

his/her employment application. *See Pellow v. Daimler Chrysler Servs. N.A., LLC*, 2006 WL 2540947 (E.D. Mich. Aug. 31, 2006);[5] *Waller v. Daimler Chrysler Corp.*, 391 F. Supp. 2d 594 (E.D. Mich. 2005).[6] In *Pellow*, the Court held that "Defendant's review of Plaintiff's application constituted valid consideration for Plaintiff's promise to arbitrate claims." *Pellow*, 2006 WL 2540947, at *5-6 (citing cases); *accord Krusinski v. DaimlerChrysler Corp.*, 2004 WL 315171, at *3 (Mich. Ct. App. 2004) ("defendant's agreement to review plaintiff's employment application… constituted consideration to support the contract"). The *Pellow* Court held that the employee's acceptance and agreement that he will "be governed by and must comply with Chrysler's [EDRP], which requires many employment-related claims to be resolved exclusively through arbitration," like Lukas' employment application here, created a binding contract. *Pellow*, 2006 WL 2540947, at *7 (internal quotation marks omitted).

Similarly, in *Waller*, the Court considered the Company's employment application which, similar to the version Lukas signed, provided: "I agree that I will be governed by and must comply with [the Company's EDRP], which requires many employment-related claims to be resolved exclusively through arbitration."

---

[5] All unpublished cases cited are attached in alphabetical order by case name as Exhibit 4. *See* Index of Exhibits.

[6] Judge Donofrio of the Macomb County Circuit Court similarly held that the EDRP was enforceable in *Orta v. DaimlerChrysler*, Case No. 02-0018, Macomb County Circuit Court, July 15, 2002 Order.

391 F. Supp. 2d at 596.  The *Waller* Court held that "by signing the employment application, Plaintiff unambiguously agreed to be bound by the EDRP," and was required to arbitrate his discrimination claim.  *Id.* at 602.[7]

### a.    A Valid Contract To Arbitrate Exists.

The first part of the *Stout* test is clearly satisfied.  Plaintiff Lukas entered into a valid arbitration agreement when he signed his employment application which expressly provided that he agreed to be bound by the EDRP.

### b.    Plaintiff Lukas' Claims Fall Within The Arbitration Provision's Scope.

"Absent some ambiguity in the agreement ... it is the language of the contract that defines a scope of disputes subject to arbitration."  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  The EDRP provides that the "scope of this EDRP extends to all Covered Disputes whether based on federal, state, or local law."  *Id.* at p. 3.  Here,

---

[7] The EDRP's provision confirming that it is "governed by the Federal Arbitration Act," *see* D. Williams Decl., Ex. 1-E, p. 10, by itself is sufficient to bring it within the FAA's purview.  *See McGill v. Meijer, Inc.*, 2011 WL 1166895, at *2, n.1 (W.D. Mich. March 28, 2011) (arbitration program enforceable under FAA because it "contains an express provision that it [is] enforceable under the FAA").  It is "well-settled that the FAA applies to employment contracts except for those of transportation workers."  *Id.*; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (FAA governed arbitration provision in employment application).

Lukas' age discrimination claims fall squarely within the EDRP, which lists "examples of Covered Disputes," including "discrimination based upon … age" D. Williams Decl. ¶¶ 17-20, Ex. 1-E, p. 1.

### c. Plaintiff Lukas' Federal Statutory Claims Are Arbitrable As A Matter Of Law.

Finally, the U.S. Supreme Court and this Circuit have repeatedly enforced agreements to arbitrate federal statutory discrimination claims. Without question, Lukas' ADEA and ELCRA claims are arbitrable. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (holding that claims under the ADEA are arbitrable); *Cottrell v. Club Demonstration Servs.*, 2007 WL 2413070, at *11 (E.D. Mich. Aug. 2, 2007) (granting motion to compel arbitration of ELCRA claims). Accordingly, the third and final applicable part of the *Stout* test is also met here and arbitration should be compelled.

### 2. The EDRP Is Also Fully Enforceable As To The 1995 EDRP Plaintiffs.

The 1995 EDRP Plaintiffs similarly entered into valid and binding agreements to arbitrate. The 1995 EDRP Plaintiffs confirmed their assent to the EDRP as a matter of fact and law by continuing to work for the Company after receiving notice of the EDRP's implementation in 1995. Under Michigan law, this created a binding agreement to arbitrate. *Debro v. French,* 2017 WL 927622, at *3 (E.D. Mich. Feb. 16, 2017) ("an offer to arbitrate disputes [] may be accepted

through continued employment").[8]   Thus, the 1995 EDRP Plaintiffs' agreement fulfills the Sixth Circuit's four-part test and their claims must be arbitrated. Namely: (1) a valid contract exists; (2) the generalized allegations of discrimination and retaliation set forth in the Complaint are explicitly included within the terms of the 1995 EDRP as to the 1995 EDRP Plaintiffs; and (3) the federal statutory claims are clearly arbitrable as a matter of law.

### D.    The Court Should Require Plaintiffs To Proceed With Arbitration On An Individual Basis.

The FAA's "overarching purpose" is "to ensure the enforcement of arbitration agreements according to their terms, so as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 344.  As such, the FAA provides that a party may obtain an order compelling arbitration "in the manner provided for in [the parties'] agreement."  9 U.S.C. § 4.  Here, the "manner provided" is on an individual basis. *See* D. Williams Decl., Ex. 1-E, pp. 3, 10.  In *Concepcion*, the Supreme Court upheld the enforceability of class waivers in arbitration agreements, reaffirming the bedrock principle that arbitration agreements must be enforced as written. *Concepcion*, 563 U.S. at 352; *Direct TV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) ("The [FAA] is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act.").  In *American Express Co. v. Italian*

---

[8] *Accord McGill,* 2011 WL 1166895, at *4 (employee who agreed to abide by employer's policies and procedures was bound by employer's arbitration program).

*Colors Restaurant*, the Supreme Court reiterated that courts "must rigorously enforce arbitration agreements according to their terms, including terms that specify *with whom* [the parties] choose to arbitrate their disputes."  133 S. Ct. 2304, 2309 (2013) (internal quotations and citations omitted).  The Supreme Court cited its prior decision in *Gilmer*, an ADEA case, stating:  "In *Gilmer* … we had no qualms in enforcing a class waiver in an arbitration agreement…."  *Id.* at 2311.

Likewise, courts in this Circuit, including this Court, have upheld class action waivers.  *See Zawada v. Uber Tech., Inc.*, 2016 WL 7439198 (E.D. Mich. Dec. 27, 2016) (Michelson, L.); *Smith v. BT Conferencing, Inc.*, 2013 WL 5937313 (S.D. Ohio Nov. 5, 2013).  Consistent with these precedents, FCA US is entitled to an order compelling Lukas to submit his claims to arbitration on an individual basis, and dismissing Lukas from this case.  *See Arnold v. Arnold Corp.*, 920 F.2d 1269, 1276 (6th Cir. 1990) (permitting dismissal of case after compelling arbitration).[9]

The 1995 EDRP Plaintiffs similarly must proceed with their arbitrations on an individual basis.  Under Sixth Circuit authority, class arbitration is not permitted where the arbitration agreement at issue is silent as to its availability.  *See Reed Elsevier, Inc. v. Crockett,* 734 F.3d 594, 599 (6th Cir. 2013) ("The principal reason

---

[9] To the extent that the Court determines dismissal is inappropriate, it should instead stay the proceedings pending arbitration.  *See* 9 U.S.C. § 3.

to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it"); *accord AlixPartners, LLP v. Brewington,* 836 F.3d 543, 553 (6th Cir. 2016); *Huffman v. Hilltop Cos., LLC,* 747 F.3d 391 (6th Cir. 2014).   Accordingly, Plaintiffs' claims (with the exception of the impermissible class-wide allegations) should be dismissed and sent to arbitration on an individualized basis.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM OF DISCRIMINATION.

### A.   Plaintiffs Bravo, Winfrey, And Lukas Fail To Assert Any Facts To Support A Claim Of Age Discrimination.

The Claims of Plaintiffs Bravo Winfrey and Lukas must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for the further reason that they fail to allege with requisite specificity that they were discriminated against in any way or are entitled to any relief whatsoever.

The Supreme Court has held that, to survive a motion to dismiss, a Complaint must allege facts that, if true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is plausible if a plaintiff alleges facts that "allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.   "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements do not suffice." *Id.* [10]

The Complaint lacks any substantive allegations as to Plaintiffs Bravo, Winfrey and Lukas, let alone allegations that could "state a claim to relief that is plausible on its face." *Id.* at 678. Indeed, the **only** allegations in the Complaint even mentioning these Plaintiffs are: (1) they are over 55 years of age; (2) they are or were employed by FCA US; (3) their state of residence; (4) their dates of employment with FCA US; (5) their educational degrees; and (6) their job classification while employed at FCA US. *See* Compl. ¶¶ 4-13. Plaintiffs Bravo, Winfrey and Lukas do not allege any facts to support a claim of individual discrimination, much less class-wide discrimination. The Complaint is thus wholly insufficient to state a claim as to these Plaintiffs and should be dismissed pursuant to *Iqbal* as to all claims asserted.

### B. Plaintiff Cerjanec Has Asserted No Plausible Claim Of Age Discrimination, Requiring Dismissal Of Counts II And V.

Plaintiff Cerjanec's individual claims of wrongful termination in Counts II and V should be dismissed because they fail to "set forth the requisite factual matter to make plausible" that he was terminated "because of" his age. *Lewis v. Detroit Pub. Schs.*, 2013 WL 5785781, at *13 (E.D. Mich. Sept. 23, 2013)

---

[10] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal* at 678 (citation omitted).

(Michelson, L.) (recommending granting of Rule 12(b)(6) motion and dismissal of ADEA claims where plaintiff's allegations did not make the "requisite tie between the claimed adverse actions and the claimed age-based animus.").[11]

Cerjanec's claims are devoid of any facts supporting such an inference. He has alleged that age was a "contributing factor" in the decision to terminate his employment, but the ADEA requires a much higher "but for" showing – that age was the motivating factor in the decision. Compl. ¶ 74; *see, e.g.*, *Lewis*, 2013 WL 5785781, at *15 (amended complaint failed to show "but for" age related animus, adverse acts would not have occurred).[12]

Cerjanec offers no factual allegations that could establish that he suffered any adverse employment acts because of his age. While he baldly claims that he was treated "differently from similarly situated employees" (Compl. ¶¶ 76, 107), he fails to describe any such treatment, or any facts regarding how those employees are similarly situated. A pleading offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. Without additional factual

---

[11] The District Court adopted the recommendation that the ADEA claims be dismissed. *Lewis v. Detroit Pub. Schs.*, 2013 WL 5785776, at *2-3 (E.D. Mich. Oct. 28, 2013).

[12] Cerjanec has not alleged in the Complaint that his individual PLM ratings for 2014, 2015 or 2016 were adversely affected because of his age.

detail, Cerjanec's allegations are essentially bare and insufficient recitations of the elements of an age discrimination claim. *Laws v. HealthSouth N. Ky. Rehab. Hosp. Ltd. P'ship,* 508 F. App'x 404, 410-11 (6th Cir. 2012).[13]  His claims, including his individual claims set forth in Counts II and V, must be dismissed.

### C.    Plaintiff Modlin Failed To Assert A Plausible Claim Of Age Discrimination In Counts III And VI.

Plaintiff Modlin's allegations in both Counts III and VI that he was constructively discharged are nothing more than naked assertions devoid of any factual details, and thus fail to state a claim and should be dismissed.[14]  To establish a constructive discharge, "a plaintiff must show that (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; (2) the employer did so with the intention of forcing the employee to quit; and (3) the employee actually quit." *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 420 (6th Cir. 2015) (citation omitted).

Modlin's vague allegations fail to meet the Sixth Circuit's requirements for a plaintiff to establish "intolerable working conditions":

---

[13] "In order to establish a prima facie case under [the ADEA], [a plaintiff] must show that: (1) she was over 40 years old; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was either replaced by a person outside the protected class or treated differently than similarly-situated individuals." *Id.*

[14] As noted below in Section III.B, Modlin filed a Charge of Discrimination with the EEOC.  However, in the Complaint he fails to allege (or even reference) his charge.

16

> Whether a reasonable person would have [felt] compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014) (quoting *Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001)).  Modlin has not pled any allegations that would support the conclusion that his working conditions were intolerable.  Nor does he allege any facts suggesting his working conditions were so intolerable that he felt compelled to resign.  *See* Compl. ¶¶ 89, 119.  At best, Modlin's allegations imply that his performance review caused him to resign.  But negative performance reviews are insufficient to establish constructive discharge. *Henry v. Abbott Labs.*, 651 F. App'x 494, 507 (6th Cir. 2016) (a low performance evaluation and letter of expectations were insufficient to establish a constructive discharge).[15]  In short, Modlin's allegations are insufficient and his individual claims (Counts III and VI) and his claims within the class counts (Counts I and IV) fail as a matter of law.

---

[15] *See also Agnew v. BASF Corp.,* 286 F.3d 307, 310 (6th Cir. 2002) ("[W]e have held that criticism in performance reviews and institution of performance improvement plans, alone, do not constitute objectively intolerable conditions.").

## III.   COUNT I (PURPORTED ADEA CLASS CLAIMS) MUST BE DISMISSED BASED ON MULTIPLE PLEADING FAILURES.

### A.   ADEA Claims Cannot Be Pursued Under Rule 23.

Plaintiffs' Complaint simply ignores that Rule 23 class actions are not available for ADEA claims. *Butcher v. Gerber Prod. Co.*, 88 F. Supp. 2d 788, 790 n.1 (W.D. Mich. 2000).  Section 626 of the ADEA only permits ADEA claims to be brought as collective actions pursuant to § 216 of the Fair Labor Standards Act ("FLSA"), under which participating members "opt-in" to the class as opposed to "opting out" of a typical Rule 23 class action.  *Id.; see also Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001) ("Plaintiff wishing to sue as a class under [the] ADEA must utilize the opt-in class mechanism provided in 29 U.S.C. § 216(b) instead of the opt-out class procedure provided in Fed. R. Civ. P. 23."); *King v. Gen. Elec. Co.*, 960 F.2d 617, 621 (7th Cir. 1992) (finding that the ADEA adopted the FLSA collective action procedure and, thus, the Section 16b opt-in procedure preempts Rule 23's class action procedure); *Lusardi v. Lechner*, 855 F.2d 1062, 1068 n.8 (3d Cir. 1988) (noting that "[c]ourts have generally recognized that Rule 23 class actions may not be used under FLSA §16(b).").  As the Fifth Circuit noted in *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975), Rule 23 does not guide Section 216 collective actions  because, "There is a **fundamental, irreconcilable difference** between the class action described by Rule 23 and that provided for by FLSA § 16(b)." *Id.* (emphasis

added).   Accordingly, Plaintiffs' claim for Rule 23 class certification of their

ADEA claims fails.

**B.    Plaintiffs Did Not Timely Exhaust Their Administrative
Remedies.**

A prerequisite to filing an ADEA suit is timely filing a charge with the

EEOC.  *See Hoover v. Timken Co.*, 30 F. App'x 511, 512-13 (6th Cir. 2002).[16]  A

court may not consider an employee's ADEA claim that was not timely filed with

the EEOC.  *See McKnight v. Gates,* 282 F. App'x 394, 398 (6th Cir. 2008)

(affirming dismissal of plaintiff's ADEA class claims and denying motion for class

certification where plaintiff failed to exhaust administrative remedies).

Moreover, **even if an EEOC charge is timely filed, the scope of the

lawsuit is limited to the claims asserted in the administrative charge**.  *See

Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010).   The

exhaustion requirement is "mandatory in this circuit, and the failure to raise any

argument relating to *disparate impact* is more than a mere 'technical defect'."

*Rumburg v. Sec'y of the Army*, No 10-11670, 2011 WL 1595067, at *12 (E.D.

Mich. Apr. 27, 2011) (emphasis in original).

Additionally, a class action alleging discrimination "**must be supported by

at least one representative charge, timely brought by one of the named**

---

[16] An EEOC charge must be filed within 300 days after the alleged unlawful
employment practice occurred.  *See* 42 U.S.C. § 2000e-5(e).

plaintiffs, which adequately identifies the collective, class-wide nature of the claimed discrimination.**"  *Marquis v. Tecumseh Prods. Co.*, 206 F.R.D. 132, 150 (E.D. Mich. 2002) (Title VII); *see also Howlett v. Holiday Inns., Inc.*, 49 F.3d 189, 194 (6th Cir. 1995) (single filing rule applies to ADEA).  In *Marquis*, this Court found that the EEOC charge did not alert the employer or EEOC to the alleged class-wide discrimination or provide adequate notice of the scope of the class, and therefore, the plaintiffs' failure to exhaust their administrative remedies precluded them from proceeding with a class action.  *Id.* at 155.

Here, as in *Marquis*, no Plaintiffs brought a **timely** EEOC charge nor did the two charges that were filed notify the EEOC of disparate impact claims.[17] Specifically, in Count I, Plaintiffs purport to bring a class action under the ADEA on behalf of themselves and certain "salaried, non-union employees ages 55 and older," who received "less favorable and disproportionate adverse ratings and evaluations in comparison to salaried, non-union employees under the age of 55." Compl. ¶45.  Plaintiffs allege they received lower PLM rating in 2014, 2015 and 2016 because of their age.

However, Cerjanec's and Modlin's charges make no mention of 2014, 2015

---

[17] While the Complaint references Cerjanec's charge, it is silent as to Modlin's charge.  Thus, because the Complaint does not assert the class claims are supported by Modlin's charge, this Court should find that Modlin's charge cannot be considered a "representative charge" for purposes of the class claims asserted in the Complaint.

or 2016 PLM ratings.[18]  *See* Watson Decl., Exs. 3-A, 3-B.  Instead, the charges

simply state, in relevant part, that they complained to Human Resources regarding

alleged "unwarranted and unjust performance rating[s], to no avail."  *Id.*  Cerjanec

then claims that "On or about 21 February 2017, my employment was

terminated."[19]  *Id.* at Ex. 3-A.  Modlin claims that "On or about January 31, 2017, I

was forced to retire."  *Id.* at Ex. 3-B.  Cerjanec's and Modlin's charges fail to

assert facts that can support a disparate impact claim under the ADEA.  To support

an ADEA disparate impact claim, a plaintiff must have alleged to the EEOC a

specific facially neutral policy that had an unintended adverse impact on the

alleged protected class. In *Brown v. Ameriprise Financial Services, Inc.*, 707 F.

Supp.2d 971, 976-77 (D. Minn. 2010) the court held that EEOC charge assertions

that African American employees were forced to resign, threatened with

termination, paid less than white employees, and placed in lower paying positions

while white employees were treated more favorably and allowed promotional

---

[18] The Declaration of Jerome R. Watson, sworn to on June 16, 2017, and submitted
herewith, shall be referred to as the "Watson Decl., [Exhibit No., Paragraph No.]."
This Court may properly consider the facts alleged in Cerjanec and Modlin's
Charges of Discrimination filed with the EEOC in connection with Defendant's
motion to dismiss.  *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426,
430 (6th Cir. 2008); *Amini v. Oberlin Coll.*, 259 F.3d 493, 502-03 (6th Cir. 2001).

[19] As noted below in Section V, any claims regarding PLM ratings received for
2014 and 2015 are time barred as to Cerjanec's individual claims. Therefore,
Cerjanec cannot now bring these claims either individually or on behalf of a class.
*See Dallas v. Alcatel-Lucent USA, Inc.*, 2012 WL 424878 (E.D. Mich. Feb. 9,
2012).

opportunities and training were insufficient to support a disparate impact claim.[20]

The sole allegation in Cerjanec's and Modlin's charges relating to other employees is, "I and similarly situated other co-workers, 55 and over, have been routinely subjected to unwarranted lower PLM/Performance ratings."  *See* Watson Decl., Exs. 3-A, 3-B.   As noted below in Section IV.A, Plaintiffs' Complaint identifies only an allegedly "subjective" multifaceted evaluation process. Cerjanec's and Modlin's charges are far from sufficient to support a disparate impact claim.   Because Plaintiffs have failed to exhaust their administrative remedies, the Court should dismiss Count I of Plaintiffs' Complaint.

### C.   Plaintiffs' Proposed Subgroup Of Individuals Ages 55 And Older Is Impermissible Under The ADEA.

Even if Plaintiffs could pursue a Rule 23 class as to their ADEA claims, which they cannot, Plaintiffs' attempt to proceed by a subgroup of individuals above the minimum age for ADEA coverage fails.  The ADEA provides standing for employees 40 years of age and over to assert discrimination based on age. 29 U.S.C. § 631 (a).  Plaintiffs here seek to have the Court certify an ADEA class

---

[20] *See also Winchester v. Wal-Mart Stores Inc.*, 2015 WL 3903673, *6  (W.D. Ky. June 25, 2015) (holding plaintiff's EEOC charge failed to adequately support a disparate impact claim because it only alleged "During the past year, I observed older persons are hired into more laborious and lower pay level positions, while younger persons have been hired into higher pay level positions" because it did not demonstrate that the defendant had "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another.").

of "[a]ll salaried, non-union employees ages 55 and older ..., " ignoring workers from 40 to 54 years of age.  Compl. ¶ 44(a)-(b).  Sixth Circuit law prohibits classes of subgroups of individuals protected under the ADEA, such as the ones Plaintiffs propose.  In *Smith v. Tennessee Valley Authority*, 924 F.2d 1059 (6th Cir. 1991), the Sixth Circuit rejected an attempt to have a subgroup in an ADEA disparate impact claim.  The plaintiff, who was 61, was laid off as part of a workforce reduction.  He brought suit alleging disparate impact claims and asserting he was treated differently than employees younger than him, including employees older than 40.  The Court held that plaintiff failed to establish a disparate impact claim ruling, "A plaintiff cannot succeed under a disparate impact theory by showing that younger members of the protected class were preferred over older members of the protected class."  *Id.* at *11-12.

Similarly, numerous district courts have prohibited subgroups in ADEA disparate impact cases. For example, in *E.E.O.C. v. City of Indep., Mo*, 2005 WL 2898021, at *6 (W.D. Mo. Oct. 31, 2005), the EEOC asserted an ADEA disparate impact claim, contending that the defendant's leave donation program affected a subgroup of older workers.  In response, the defendant argued that the EEOC's disparate impact theory only could be cognizable under the ADEA if its leave donation program affected "the entire class of persons protected by the ADEA." *Id.* Citing to the Eighth Circuit's opinion in *McDonnell Douglas Corp.*, the district

court held that the ADEA did not permit claims on behalf of subgroups. *See also Abdu-Brisson v. Delta Air Lines, Inc.*, 1999 WL 944505, at *4 n.4 (S.D.N.Y. Oct. 19, 1999) ("courts have held that a disparate impact theory of liability must allege a disparate impact on the *entire* protected group of employees and not simply one segment or 'sub-group' of the protected class of employees."); *Schechner v. KPIX-TV*, 2011 WL 109144, at *4 (N.D. Cal. Jan. 13, 2011) ("Every court of appeals decision addressing [the subgroup] issue has concluded that it is improper to distinguish between subgroups of employees over the age of 40 and that a disparate impact analysis must compare employees aged 40 and over with those 39 and younger.").[21]  Accordingly, because Plaintiffs' proposed subgroup of employees 55 years of age and older is prohibited under Sixth Circuit law, Count I should be dismissed.

## IV.   PLAINTIFFS FAIL IN MULTIPLE WAYS TO PROPERLY PLEAD CLASS CLAIMS.

### A.   Plaintiffs Fail To Adequately Allege Disparate Impact.[22]

#### 1.   Plaintiffs Neglect To Plead Facts That Could Establish An ADEA Or ELCRA Disparate Impact Claim.

---

[21] While the Third Circuit has recently come to a contrary conclusion, the Court should follow the Sixth's Circuit's decision in *Smith*.

[22] Plaintiffs' Complaint includes facts solely alleging age discrimination. However, Paragraph 59 includes citations to non-age discrimination statutes (42 U.S.C. §2000e and 42 U.S.C. §1981).  Plaintiffs have asserted no facts that would support any claim under either of these federal statutes and these references appear to be a typographical error.  As such, any claims based on these statutes should be dismissed since the Complaint's allegations do not support them.

A disparate impact claim requires that Plaintiffs: (1) identify and challenge a specific facially neutral employment practice and (2) offer statistical evidence of a kind or degree sufficient to show that the practice in question has caused the identified adverse effect. *Aldridge v. City of Memphis*, 404 F. App'x 29, 31 (6th Cir. 2010). To withstand a motion to dismiss, it is "not enough to simply allege that there is a disparate impact on workers or point to a generalized policy that leads to such an impact." *Smith v. City of Jackson,* 544 U.S. 228, 241 (2005). Plaintiffs must instead "isolat[e] and identify the specific employment practices that are allegedly responsible for any [disparate impact]." *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 656 (1989); *Davis v. Cintas Corp.*, 717 F.3d 476, 494 (6th Cir. 2013) (plaintiffs in disparate impact cases are required "to isolate any allegedly adverse practices and to examine their individual effects…").

Moreover, the Sixth Circuit has held that when an employment procedure consists of multiple discrete steps, a plaintiff must identify and isolate the specific practice being challenged. *Davis*, 717 F.3d at 496-98. Plaintiffs must also causally connect the specific facially-neutral employment practice to the identified disparity. *EEOC v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1276 (11th Cir. 2000). "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal

connection cannot make out a prima facie case of disparate impact" and such a case, like this one, should be dismissed. *Texas Dep't of Hous. and Cmty. Affairs v. Inclusive Cmtys. Project, Inc.,* 135 S. Ct. 2507, 2523 (2015).

Here, Plaintiffs fail to meet these basic requirements for an ADEA or ELCRA disparate impact claim (Counts I and IV).[23]   Plaintiffs challenge the **entire** allegedly "subjective" PLM process, which by their own admission is much more than a single employment practice. *See* Compl. ¶¶ 31, 45, 63, 66, 95, 96, 98. Plaintiffs concede in their Complaint that the PLM process consists of multiple, distinct steps including a supervisor's assignment of an initial "PLM Rating" (*Id.* at ¶ 24), which then is subject to a "calibration process" wherein unspecified managers "subjectively rate" employees to provide the given "PLM Score" on a scale from 1 to 9. *Id.* at ¶¶ 24-31.   Plaintiffs further claim that management involved in the "calibration process" view photographs of employees as part of that process (*Id.* at ¶ 28) and must adhere to a "forced distribution," which requires them to "subjectively rate a certain number…of employees at scores either 5 or below, regardless of performance." *Id.* at ¶¶ 31, 95.   Because Plaintiffs fail to identify which of these specific practices allegedly disproportionately affected employees ages 55 and older, Plaintiffs fail to state a claim for disparate impact.

---

[23] "ELCRA claims are analyzed under the same standards as federal ADEA claims." *Geiger v. Tower Automotive*, 579 F.3d 614, 626 (6th Cir. 2009).

*Grant v. Metro Gov't. of Nashville*, 446 F. App'x 737, 740-41 (6th Cir. 2011) (district court erred in permitting plaintiffs to challenge a promotion process as a whole); *Davis*, 717 F.3d at 497-98 (disparate impact claims failed where plaintiff challenged the defendant's entire hiring system).[24]

Moreover, Plaintiffs' Complaint fails to allege any logical or factual connection between any specific component of the PLM process and the alleged age disparities. Plaintiffs have not articulated anything inherent in the PLM process that would cause a disproportionate impact on employees ages 55 and older as compared to employees younger than 55. This is well exemplified by the fact that none of the Plaintiffs have alleged that their PLM ratings were ever lowered during any phase of the PLM process. Without more, a claim that a multifaceted process like the PLM process causes a disparate impact is not plausible. *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014) (affirming dismissal of disparate impact claims: "[f]or all its heft, the amended Complaint alludes to disparate impact in wholly conclusory terms"). Where plaintiffs fail to allege *any* causal bridge connecting an alleged ranking process to the alleged disparity, it is wholly inappropriate to assume one exists. *Joe's Stone Crab, Inc.,* 220 F.3d at 1280-81. For these reasons, Plaintiffs' disparate impact

---

[24] *See also White v. Am. Axle & Manuf., Inc.*, 2006 WL 335710, at *4 (E.D. Mich. Feb. 14, 2006) (dismissal of disparate impact claim where plaintiff did not identify any employment policies responsible for the alleged statistical disparities).

claims in Counts I and IV fail as a matter of law.

### 2. Plaintiffs' Disparate Impact Claims Fail Since They Rely On Allegations Of Intentional Discrimination

Even if Plaintiffs' Complaint could be read to identify a specific, discrete employment practice, the heart of Plaintiffs' allegation is that the PLM process permits individual managers to intentionally discriminate and use their individual age bias to impact PLM ratings for employees ages 55 and older, which directly contravenes the very core of a disparate impact claim. The Complaint's threadbare allegations frame the PLM process as an intentionally discriminatory policy.

Plaintiffs' Complaint alleges: "salaried, non-union employees ages 55 and older ... were being rated with lower scores ... at a disproportionate and alarming rate than salaried, non-union employees under the age of 55" and FCA US, "by its agents, representatives, and employees, was **predisposed** to discriminate on the basis of age and **acted in accordance with that predisposition**." *See* Compl. ¶¶ 35, 87, 117 (emphasis added).[25] On the other hand, certain workers younger than 55 were, according to Plaintiffs, allegedly "*treated* far more favorably overall." *Id.* at ¶ 34. Moreover, Plaintiffs allege that they (and their proposed "class") were "more adversely and disproportionately affected by Defendant's existing

---

[25] Whether an individual actor was "predisposed" to discriminate and "acted on that predisposition" are factors considered by Michigan Courts in **intentional discrimination** cases. *See Singal v. Gen. Motors Corp.*, 447 N.W.2d 152, 155-56 (1989).

subjective Evaluation Process." *Id.* at ¶ 46. In addition, Plaintiffs allege that managers viewed photographs during the calibration process, "to identify Plaintiffs, including their age, to management when deciding which PLM Score to use." *Id.* at ¶ 45. Plaintiffs further assert that Defendant's Employee ID numbering system (also purportedly identified during the calibration process) reflects the employee's tenure. *Id. at ¶¶* 30, 45.

In other words, Plaintiffs imply that individual managers viewed photographs of employees, as well as their Employee ID numbers, during the calibration process and then intentionally rated employees (aged 55 and older) lower because of their age. Younger workers were then "*treated* far more favorably." *See* Compl. ¶ 35. A disparate impact claim cannot survive where it rests upon an allegation of intentional discrimination and disparate impact. *See, e.g.*, *Johnson v. Metro. Gov. of Nashville*, 502 F. App'x 523, 542 (6th Cir. 2012) (district court properly dismissed plaintiff's disparate impact claim where plaintiff alleged that employer ignored objective criteria "because of an intent to discriminate" since "this type of allegation was more akin to a disparate treatment claim than it was to a disparate impact claim"); *Flatt v. Elec. Research Mfg. Corp.*, 103 F.3d 129, *4 (6th Cir. 1996) (upholding the district court's *sua sponte* dismissal of disparate impact claim because the allegations that employer has a "practice" of "running off" women employees suggested that the employer acted in

an overtly discriminatory manner).[26]

> **B.    Plaintiffs Cerjanec, Bravo, Winfrey, And Lukas Fail To Allege An Injury Sufficient For Standing.**

Under basic standing principles, a plaintiff must allege and show that she personally suffered an injury-in-fact, traceable to the challenged conduct of the defendant. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "That a suit may be a class action… adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Id.* at n.6 (citation omitted). As the Supreme Court has observed: "It is not enough that the conduct of which the plaintiff complains will injure someone. **The complaining party must also show that he is within the class of persons who will be concretely affected**." *Blum v. Yaretsky,* 457 U.S. 991, 999 (1982) (emphasis added).

Here, Plaintiffs purport to seek relief on behalf of the class for the following alleged injuries arising from their 2014, 2015 and 2016 PLM ratings: reduced compensation/bonuses, loss of promotional opportunities, disproportionately being subject to demotion, less retention, development, succession or advancement

---

[26] FCA US does not concede that Plaintiffs have or can provide statistical data to support their claim that the PLM process caused a statistically significant discriminatory impact as to employees ages 55 and older and reserves its right to address that issue at a later time.

opportunities, and/or being placed on a PIP under threat of termination. *See* Compl. ¶¶ 45, 66, 98. **However, none of the Plaintiffs (with the exception of Modlin in his individual claims for constructive discharge)[27] allege that they suffered *any* of these injuries due to their PLM ratings**. Because these Plaintiffs do not claim to have suffered any injury enumerated in the Complaint arising from their 2014, 2015, and 2016 PLM ratings, they do not have standing to pursue their individual <u>or</u> class claims. Accordingly, Counts I and IV must be dismissed. *See, e.g.*, *Potts v. United Parcel Serv., Inc.*, 2008 WL 3884370 (N.D. Ill. May 9, 2008) (court grants 12(b)(1) motion and dismisses class action complaint where named plaintiff was not subject to any injuries alleged on behalf of the class).

### C.    Rule 23 Prerequisites Are Not Sufficiently Pled As To Plaintiffs' Class Claims In Count I (ADEA) And Count IV (ELCRA) Claim.

#### 1.    Class Allegations Must Be Stricken When Plaintiffs Fail To Plead Facts Supporting A Plausible Claim.

Even if Rule 23 applied to ADEA claims, which it does not, Plaintiffs also fail to plead that Rule 23's basic requirements are met as to either the ADEA or ELCRA claims. The Federal Rules of Civil Procedure require this Court to determine whether to certify this lawsuit as a class action "at an early practicable time." Fed. R. Civ. P. 23(c)(1)(A); *accord* Fed. R. Civ. P. 12(f); Fed. R. Civ. P.

---

[27] Moreover, as stated above, Modlin's individual constructive discharge claim fails as a matter of law.

23(d)(1)(D) (courts have the power to issue an order "requir[ing] that the pleadings be amended to eliminate allegations about representation of absent persons [i.e., class members] and that the action proceed accordingly").  Where it is clear from the complaint's face that a proposed class cannot satisfy Rule 23's requirements, the class allegations may be stricken or dismissed.  *See, e.g.*, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011) (affirming grant of motion to strike class allegations and dismissal of Rule 23(b)(3) class where predominance requirement was not met).  The legal standard is the same as that applied in deciding a motion to dismiss under Rule 12(b)(6).  *Schilling v. Kenton Cnty.*, 2011 WL 293759, at *11 (E.D. Ky. Jan. 27, 2011) (court grants Rule 12(b)(6) motion to dismiss class claims); *supra* at Section II.A.

Here, Plaintiffs failed adequately to plead that the Rule 23 prerequisites are met.[28]  Under Rule 23(a)(2), a plaintiff must show that "there are questions of law or fact common to the class" ("commonality"), and under Rule 23(a)(3), a plaintiff must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class" ("typicality").  Fed. R. Civ. P. 23(a)(2), (3).  As the Supreme Court observed, the "commonality and typicality requirements of

---

[28] Pursuant to Rule 23(a)(1), the class must be so numerous that joinder of all members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  Here, Plaintiffs claim only that "thousands of salaried workers" are subjected to the evaluation system.  (Compl. ¶ 50).  The class does not, however, include **all salaried workers**. Because Plaintiffs have failed to plead that the class, as defined by Plaintiffs, is sufficiently numerous, Plaintiffs' class allegations must be dismissed or stricken.

Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

> ### 2. Plaintiffs' Complaint Overlooks The Supreme Court's Holding In Dukes And Fails To Plead Facts Supporting Rule 23's Commonality And Typicality Requirements.

In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353-54 (2011), the Supreme Court defined the requirements for the commonality and typicality inquiry. Current and former employees claimed that local managers exercised their discretion over pay and promotions in a "subjective manner," which had a disparate impact on female employees. *Id.* at 343. With respect to commonality, the Court explained that:

> **the class members [must] have suffered the same injury**. This does not mean merely that they have all suffered a violation of the same provision of law…. Their claims must depend upon a [common contention]…**which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke**.

*Id.* at 349-50 (emphasis added). The Court explained that commonality was not satisfied because "[o]ther than the bare existence of delegated discretion, respondents have identified no 'specific employment practice' – much less one that ties all their 1.5 million claims together." *Id.*

Plaintiffs' class allegations here fail these basic requirements. **First**, Plaintiffs do not allege that they suffered any injury, let alone the same injuries as

those allegedly suffered by the class. *See supra* at Section IV.B. **Second**, Plaintiffs' class allegations are nothing more than a "formulaic recitation" of Rule 23's requirements. *Twombly*, 550 U.S. at 555. With respect to typicality, Plaintiffs simply allege: "Plaintiffs' claims are typical of the claims of the members of the Class and they are an adequate representative of the Class." Compl. ¶ 55. These "labels and conclusions" completely devoid of "factual enhancement" are insufficient for pleading a Rule 23 claim. *Iqbal* at 678; *Schilling*, 2011 WL 293759, at *4 (inability "to establish even just one of the prerequisites of subdivisions (a) or (b) [mean] the class allegations must be dismissed").[29]

**Third**, Plaintiffs do not identify any uniform employment practice that would provide the commonality needed for a class action. To the contrary, as in *Dukes,* Plaintiffs allege only that Defendant had a policy of discretion. First, a direct supervisor exercised his/her discretion by evaluating an employee as "high," "medium," or "low." Compl. ¶ 24. Next, an undefined group of management would "subjectively" calibrate these ratings, and assign a PLM rating of 1-9. *Id.* at ¶¶ 26-29. To this end, Plaintiffs do not allege what, if anything, ties together the 2016 or 2015 PLM rating received by any Plaintiff with the 2014 PLM rating

---

[29] Defendant does not concede that any of the Rule 23 prerequisites are met here (including the adequacy of representation requirement in Rule 23(a)(4)), for the reasons stated here, and for other reasons, which Defendant will address at a later date, if such is necessary.

received by another Plaintiff, whose positions, managers, or work locations are not identified in the Complaint. To the contrary, Plaintiffs allege only that each employment decision was "subjective" based on the various management involved. *Id.* at ¶¶ 31, 45, 63-64, 95-96. However, as the Supreme Court has held, "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's." *Dukes,* 564 U.S. at 355. Unlike in *Dukes*, and what makes this case especially compelling for dismissal on a Rule 12(b)(6) motion, Plaintiffs do not allege that a uniform, companywide policy of discrimination exists, or point to any other "glue" that would tie together how each individual manager exercised his or her discretion. Because Plaintiffs plead no facts suggesting that all of the putative class members' claims will depend on answers to common questions, Plaintiffs' allegations fail to satisfy commonality and typicality, and must be dismissed.[30]

## V.    THE COURT SHOULD DISMISS PLAINTIFFS CERJANEC'S AND LUKAS' CLAIMS IN COUNTS I, II, IV AND V TO THE EXTENT THEY ARE TIME BARRED.

### A.    The Time Barred Plaintiffs Agreed That They Must Bring Any Employment-Related Claims Within 6 Months.

---

[30] Plaintiffs also fail to plead that Rule 23(b)(2) is satisfied, because "claims for individualized relief (like the backpay at issue here) do not satisfy [Rule 23(b)(2)]." *Dukes,* 564 U.S. at 360. Further, Cerjanec and Modlin do not have standing to seek an injunction pursuant to Fed. R. Civ. P. 23(b)(2). *Id.* at 364-65 (former employees have "no claim for injunctive or declaratory relief at all" under Rule 23(b)(2)).

In their employment applications, the Time Barred Plaintiffs (Cerjanec and Lukas) agreed they would bring any employment-related claims within 6 months. Lukas' application states:

> In consideration of [the Company's] review of my application, I agree that any claim or lawsuit arising out of my employment with, or my application for employment with, [the Company] or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. While I understand that the statute of limitations for claims arising out of an employment action may be longer than six (6) months, I agree to be bound by the six (6) month period of limitations [set forth herein] and I WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY.

D. Williams Decl. ¶ 6, Ex. 1-A.  This clause was preceded by the bold and capitalized statement:  "**READ CAREFULLY BEFORE SIGNING**."  *Id.*  This clause was also preceded by the statement:  "I have read and do understand the statements contained [in this application] and certify that they are true…".  *Id.*

Similarly, in his employment application, Cerjanec agreed:

> that any claim or lawsuit relating to my service with … [the Company] or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit.  I waive any statute of limitations to the contrary.

D. Williams Decl. ¶ 8, Ex. 1-B.  This clause was preceded by the statement:  "I have read and understand the statements contained in this [application] and certify that they are true…".  *Id.*

**B.    Michigan Federal And State Courts Have Unanimously Enforced The Limitation Agreement At Issue.**

State law governs the enforceability of contracts. *Davis v. Landscape Forms, Inc.*, 640 F. App'x 445 (6th Cir. 2016). In Michigan, "an unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would violate law or public policy." *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 32 (Mich. 2005). As the Sixth Circuit recently observed, contractually-shorted limitations periods in an employment application are consistent with and fully enforceable as a matter of Michigan law and public policy: "Michigan law requires courts to enforce contractually-shortened limitations periods like the one in [Plaintiffs'] employment application." *Davis*, 640 F. App'x at 450 (enforcing 180-day contractual limitations period in employment application, and finding 42 U.S.C. § 1981 and ELCRA claims time barred).

The shortened contractual limitation provision contained in the Company's employment application has been repeatedly litigated. Notably, **every published Michigan federal and state court that has considered this limitation agreement has held that it is enforceable**.

In *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352 (6th Cir. 2004), the Sixth Circuit considered and enforced an earlier version of the contractual limitations provision in the Company's employment application, which provided:

> I agree that any claim or lawsuit relating to my service with Chrysler Corporation or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. I waive any statute of limitations to the contrary.

*Id.* at 354. The Sixth Circuit held that this "contractual language is clear and unambiguous" and enforceable, and dismissed the employee's Title VII, ELCRA and 42 U.S.C. § 1981 claims. *Id.* at 358-59. *See also Steward v. New Chrysler,* 415 F. App'x 632, 638-39 (6th Cir. 2011) (holding six-month contractual limitations provision was enforceable, and employee's race discrimination claims based on incidents that occurred more than six months prior to suit were time barred); *Yeargin v. Chrysler Grp., LLC*, 2013 WL 593474 (E.D. Mich. Feb. 15, 2013) (holding same six-month contractual limitation provision that Plaintiff Lukas signed is: (1) "clear and unambiguous"; (2) not void as a matter of public policy; and (3) barred employee's untimely ELCRA claims); *Dedivanaj v. DaimlerChrysler Corp.*, 2007 WL 1791709, at *1 (Mich. Ct. App. June 21, 2007) (six-month limitation period is valid, enforceable, and barred sexual harassment and race association discrimination claims); *Clark v. DaimlerChrysler Corp.*, 706 N.W.2d 471 (Mich. Ct. App. 2005); *Costa v. Daimler Chrysler Corp.*, 2004 WL 1224915 (Mich. Ct. App. June 3, 2004); *Krusinski*, 2004 WL 315171; *Underwood v. Daimler Chrysler Corp.*, 2002 WL 31953849 (Mich. Ct. App. Dec. 13, 2002).

### C.   The Time Barred Plaintiffs' Claims Fail.

Because Plaintiffs Cerjanec and Lukas are subject to the six-month limitations period described above, any claims arising out of any alleged "employment action" which occurred prior to August 31, 2016, more than six months before the original Complaint was filed (February 27, 2017), are time barred and should be dismissed.[31] *See* Dkt. 1.  Thus, the Complaint's allegations prove that the time limit for asserting claims based on the 2014 and 2015 PLM ratings has long expired.  *See, e.g., Howell v. Farris,* 655 F. App'x 349, 351 (6th Cir. 2016) (affirming district court's dismissal of complaint based on expiration of one-year statute of limitation where complaint's factual allegations, contrary to plaintiff's assertions, supported dismissal); *see also Katoula v. Detroit Entm't LLC,* 2012 WL 6088325 (E.D. Mich. Dec. 6, 2012) (court dismissed plaintiff's 2012 complaint where he was terminated in 2009 and failed to allege facts that would satisfy his burden to establish willfulness under the FMLA so that the claim was not time barred).

In Counts I and IV (disparate impact) Plaintiffs purport to bring claims on behalf of a class of employees ages 55 and older who were subject to the "Evaluation Process" and received PLM ratings of 5 or below for the years 2014,

---

[31] Moreover, Plaintiff Lukas was not added as a Plaintiff until March 2, 2017 and any claims he asserts that arose more than six months prior to March 2, 2017 are arguably time barred. (Dkt. 4).

39

2015 and "upon information and belief, 2016."[32]  Compl. ¶¶ 36-38, 44.  Because on the Complaint's face there is no allegation that the claims encompass "employment actions" arising after August 31, 2016, those claims are time barred.

## VI.    CONCLUSION

Defendant respectfully requests that this Court compel individual arbitration and dismiss the Complaint.   Alternatively, Defendant requests that the Court dismiss the Complaint, with prejudice, because Plaintiffs fail to state a claim; Plaintiffs failed to exhaust their administrative remedies; Plaintiffs lack standing; Plaintiffs have failed to plead the basic Rule 23 requirements to support their class; and/or because Plaintiffs' proposed subgroups are impermissible under the law, and/or Plaintiffs' claims are untimely.

Dated: June 16, 2017                                  Respectfully submitted,

/s/Jerome R. Watson                              Daniel E. Turner (Bar #719330)
Jerome R. Watson                                 dturner@littler.com
Miller, Canfield, Paddock and Stone,             Jacqueline Phipps Polito (Bar #2582690)
P.L.C.                                           jpolito@littler.com
Attorney for Defendant                           Tasha K. Inegbenebor (Bar #382905)
150 West Jefferson, Suite 2500                   tinegbenebor@littler.com
Detroit, Michigan  48226                         LITTLER MENDELSON, P.C.
(313) 963-6420                                   3344 Peachtree Road N.E., Suite 1500
watson@millercanfield.com                        Atlanta, GA  30326.4803
P27082                                           Phone: 404.233.0330

                                                 Attorneys for Defendant FCA US LLC

---

[32] Neither of the Time Barred Plaintiffs allege that they received PLM ratings of 5 or below in 2014, 2015, or 2016.

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to:

| | |
|---|---|
| Shereef H. Akeel | shereef@akeelvalentine.com |
| Hasan Kaakarli | hasan@akeelvalentine.com |
| Michael L. Pitt | mpitt@pittlawpc.com |
| Megan A. Bonanni | mbonanni@pittlawpc.com |
| Robert W. Palmer | rpalmer@pittlawpc.com |
| Carey S. McGehee | cmcgehee@pittlawpc.com |

*/s/Jerome R. Watson*
Jerome R. Watson
Miller, Canfield, Paddock and Stone, P.L.C.
Attorney for Defendant
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
watson@millercanfield.com
P27082

29363522.1\155704-00005

41