# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| DAN CERJANEC, RODRIGO BRAVO, MARK MODLIN, and WILLIAM WINFREY, on behalf of themselves and all others similarly situated, | Case No. 17-10619 Honorable Laurie J. Michelson |
| Plaintiffs, | |
| v. | |
| FCA US, LLC, | |
| Defendant. | |

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND/OR MOTION TO STRIKE CLASS AND COLLECTIVE ACTION ALLEGATIONS [39]

Named Plaintiffs are current and former employees of Fiat Chrysler Automobiles (FCA). They allege that an employee-evaluation policy has a disparate impact on employees aged 55 and older. As a result of this policy, Plaintiffs, and others like them, allegedly received lower evaluation scores which resulted in missed career advancements, bonuses, placement on probation, and, in some cases, termination. Plaintiffs additionally bring individual claims of intentional age discrimination.

Defendant FCA previously sought to compel arbitration and to dismiss the complaint. The Court denied the motion, but allowed Plaintiffs one additional opportunity to amend the complaint to correct any deficiencies. Plaintiffs took that opportunity and filed a second amended complaint. FCA has again moved to dismiss. As detailed below, the Court finds that dismissal is only warranted for Modlin's individual claims of constructive discharge.

**I.**

Plaintiffs' discrimination claims arise out of the manner in which FCA has evaluated job performance since 2010. (R. 37, PageID.1330, 1334.) FCA has an annual Performance and Leadership Management (PLM) evaluation process for salaried employees. Scores range from one to nine, with nine being the best score. (R. 37, PageID.1334.) The higher the score, the higher the bonus and the greater the opportunity for advancement. (*Id.*) A score of five or below can result in probation, or even termination. (*Id.*)

In the first step of the PLM process, direct supervisors give their employees an initial score based upon set leadership and performance traits. (R. 37, PageID.1331.) Next, FCA management meet for a calibration process. (R. 37, PageID.1331–1332.) During this calibration process, scores are adjusted to a forced curve such that a fixed percentage of employees are assigned high and low scores. (*Id.*) Employees' photos, ages, and employee identification numbers (which correlate with seniority) are "shown or made known" to the evaluating managers. (R. 37, PageID.1332.) It is the forced-curving that, according to Plaintiffs, causes employees over the age of 55 to disproportionately receive scores of five or below compared to employees under 55. (R. 37, PageID.1335.)

Plaintiffs are all long-term employees of FCA. Each received PLM scores of five or below as a result of this forced ranking which, in turn, caused them to receive lower compensation and bonuses or to lose their jobs. (R. 37, PageID.1335, 1336.)

William Winfrey, age 61, and Rodrigo Bravo, age 60, were both hired by FCA in the 1980s and remain employed with FCA. (R. 37, PageID.1327.) Both received PLM scores of five and below in 2014, 2015 and 2016. (R. 37, PageID.1336.)

Mark Modlin, age 58, was also hired in the 1980s. (R. 37, PageID.1327.) His employment ended in 2017. (R. 37, PageID.1327.) Modlin received PLM scores of 5, 1 and 1, in 2014, 2015 and 2016. As a result of receiving lower scores, and the continued mistreatment based on that alleged discrimination, Modlin involuntarily resigned. (R. 37, PageID.1336, 1348–1350.)

Dan Cerjanec, age 59, was hired in 1994 and remained at FCA until he was terminated in 2017. (R. 37, PageID.1326.) Cerjanec received PLM scores of 5, 4, and 1 in 2014, 2015 and 2016. Cerjanec was terminated as a result of these low scores. (R. 37, PageID.1346–1347.)

Plaintiffs bring a disparate-impact claim as a collective action under the Age Discrimination in Employment Act (ADEA) and as a class action under Michigan's Elliot-Larsen Civil Rights Act (ELCRA). They additionally bring individual claims of disparate treatment under the same statutes.

FCA now moves to dismiss Plaintiffs' claims. It raises six broad arguments: Plaintiffs failed to adequately plead their disparate impact claims; Plaintiffs propose a class of employees aged 55 and older which is not permissible under ADEA; Plaintiffs failed to exhaust their disparate-impact claims; Plaintiffs will be unable to meet Rule 23 class action prerequisites; Plaintiffs' individual claims fail to state a claim of age discrimination; and Bravo and Winfrey failed to exhaust. The Court will take each argument in turn.

## II.

When, as here, a defendant moves to dismiss pursuant to Rule 12(b)(6), the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), governs. Under that standard, a court first culls legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The inquiry then becomes whether the remaining assertions of fact "allow[] the court to draw the

reasonable inference that the defendant is liable[.]" *Id.* at 678. Although this plausibility threshold is more than a "sheer possibility" that a defendant is liable, it is not a "'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Whether a plaintiff has presented enough factual matter to "'nudg[e]'" his claim "'across the line from conceivable to plausible'" is "a context-specific task" requiring this Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).

### III.

### A.

Under the ADEA, it is unlawful for an employer to take an adverse employment action (e.g., termination) against someone because of her age, or to limit or classify employees in a way that would deprive employees of opportunities because of their age. *See* 29 U.S.C. § 623(a). The ADEA has been read to proscribe both intentional discrimination, *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993), as well as disparate impact, *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 240 (2005). ELCRA claims are analyzed under the same general framework as federal ADEA claims. *Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009).

"When bringing a disparate impact claim, plaintiffs need not show that a defendant intended to discriminate, but must instead prove that a particular employment practice, although neutral on its face, has produced a significant adverse effect on a protected group to which the plaintiff belongs." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 830 (6th Cir. 2000). FCA asserts that Plaintiffs have failed to plead a plausible claim of disparate impact because: 1) they fail to identify a particular policy, 2) their disparate-impact theory necessarily relies on intentional discrimination, and 3) they fail to allege facts causally connecting a policy to the alleged disparate impact. (*See* R. 39.) The Court will address each argument in turn.

**1.**

Employees bringing a disparate impact claim under the ADEA are "responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." *Smith*, 544 U.S. at 241 (internal quotations omitted). "Identifying a specific practice is not a trivial burden." *Meacham v. Knolls Atomic Power Laboratory*, 554 U.S. 84, 101 (2008). For example, pointing to defendant's pay plan and alleging that it was less generous to older workers does not discharge an employee's burden. *See Smith*, 544 U.S. at 241. Rather, to succeed, an employee would have to identify what practice, test or requirement within that general plan was responsible for the disparity. *Id*.

FCA alleges that Plaintiffs are merely cobbling together five different processes as one Forced Ranking/Calibration Process, instead of identifying a single process that is causing the alleged disparity. (R. 39, PageID.1405–06.) Specifically, FCA alleges that this process entails: forced ranking of employees, arbitrary calibration of employees, use of employees' photographs, use of age data, and forced rating. (R. 39, PageID.1406.) And this appears to be taken directly from Plaintiffs' complaint. (R. 37, PageID.1338.)

But, as Plaintiffs clarify in their response, this list describes one particular process. (R. 53, PageID.1982–88.) FCA has a single calibration process as part of its overall PLM scoring plan. It is during that calibration process that managers are asked to force rank employees so that a set percentage of employees receive high and low scores. And it is during that forced ranking that managers have access to employees' photos, their ages, and their employee ID numbers. (R. 37, PageID.1331–32; R. 53, PageID.1982–88.) As Plaintiffs have alleged: "It is this forced ranking policy implemented during the calibration process that is being challenged … It is also what caused the disparate impact to Plaintiffs." (R. 53, PageID.1983.) Because Plaintiffs have alleged that it is

the specific process in which the raw scores are adjusted to a forced curve that causes the alleged disparate impact, the Court is satisfied that Plaintiffs have identified a sufficiently-specific process to challenge.[1]

### 2.

Next, FCA argues that Plaintiffs' disparate-impact theory necessarily relies on intentional discrimination and that intentionality is fatal to a disparate-impact theory. (R. 39, PageID.1406–08 (citing *Johnson v. Metro. Gov't of Nashville and Davidson Cnty, Tenn.*, 502 F. App'x 523, 542 (6th Cir. 2012)). FCA's argument takes three forms.

FCA first asserts that, because Plaintiffs bring individual claims of intentional discrimination, their disparate-impact claims are therefore actually claims of intentional discrimination. (R. 39, PageID.1408.)

Plaintiffs clarified, however, that they are arguing disparate impact and disparate treatment in the alternative. (R. 53, PageID.1988–89 (citing Fed. R. Civ. P. 8(d); 41(b)). Thus, the Court finds that the allegations supporting the individual claims of disparate treatment do not undermine their separate disparate-impact claims.

FCA next points to Plaintiffs' pleading that employee photos, employee ID numbers, and actual ages are "made known" during the forced ranking process. (*See* R. 39, PageID.1406; R. 37, PageID.1332.) According to FCA, this allegation suggests that managers used the data to intentionally discriminate against Plaintiffs.

---

[1] In its reply, FCA asserts that Plaintiffs are improperly relying on case law that permits challenges to multi-step processes when those processes cannot be separated. (R. 56, PageID.2077–78.) But Plaintiffs only argue this in the alternative in the event the Court determines that Plaintiffs alleged a multi-stepped process. (R. 53, PageID.1986.) And the Court has found that they have adequately plead a single, specific policy.

But Plaintiffs' complaint does not have to be read that way and, on a Rule 12(b)(6) motion, it should not be. Plaintiffs' allegation that employees' photos and other age related data were "made known" to the managers could simply mean that the age-related data was available to the managers (to, for example, help them better identify certain employees)—not necessarily that managers saw the data and then made a conscious choice to discriminate on the basis of age. Indeed, the allegation supports an inference that the availability of the age data allowed *unintentional* stereotypes or prejudices to affect managers' assignment of scores, which does support a disparate impact claim. *See Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 990–91 (1988). Nothing about the highlighted statement suggests that Plaintiffs' disparate impact claim necessarily relies upon intentional discrimination, and, given that FCA moves under Rule 12(b)(6), the Court should infer just the opposite.

Lastly, FCA points to Plaintiffs' use of the word "arbitrary" to describe the calibration process. (R. 39, PageID.1407.) FCA asserts that the use of that word "frames the alleged processes at issue as an *intentionally* discriminatory series of '*arbitrary*' actions." (*Id.*) At the hearing, FCA emphasized that the word "arbitrary" necessarily suggests intentionality.

But Plaintiffs' use of the word "arbitrary" does not imply intentionality. Plaintiffs' statement of facts and allegations in the disparate impact claims never mention the word "intentional." (*See* R. 37.) And Black's Law Dictionary defines "arbitrary" as "not supported by fair, solid, and substantial cause, and without reason given." As Plaintiffs used the word "arbitrary" as a descriptor for the calibration process, Plaintiffs have plausibly pled a process involving decisions that lack reason or cause. This reading is also consistent with Plaintiffs' argument that the process results in low scores not because of a lack of merit or poor performance, but because

of age. Nothing in the complaint suggests that the policy, as described by Plaintiffs, necessarily involves intentional discrimination.

The Court finds that Plaintiffs are not improperly relying on intentional discrimination in their disparate impact claim.

**3.**

FCA next asserts that Plaintiffs "fail[ed] to allege or articulate any logical or factual causal connection" between the challenged policy and the lower ratings and, therefore, their claims should be dismissed. (R. 39, PageID.1409–10.) "[A] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys Project, Inc.*, 135 S. Ct. 2507, 2523, (2015). This causality requirement is important to "protect[] defendants from being held liable for [age] disparities they did not create." *Id*. FCA asserts that "no Plaintiff alleges that his PLM ratings were ever lowered during any of the phases of the purported challenged process," thus providing a causal link between the policy and the alleged lower scores. (R. 39, PageID.1409.)

The Court disagrees. As Plaintiffs point out, (R. 53, PageID.1989–90), the complaint says that they each received a PLM score of five or below *as a result of* the forced-ranking process. (R. 37, PageID.1336.) A plausible and natural read of "as a result of" is that the forced ranking process *caused* the plaintiffs to receive scores of five and below. Plaintiffs allege that they all received scores of 5 and below (and provide precise scores), they also allege that they received these low scores because of the forced ranking, and these scores resulted in adverse employment actions, including termination. These are factual allegations that the Court must accept as true. *Iqbal*, 556

U.S. at 679. Doing so, the Court finds that Plaintiffs have pled a plausible causal connection between the challenged policy and the identified disparity.

**B.**

FCA also asserts that Plaintiffs' proposed class of employees aged 55 and older is an impermissible subgroup within the ADEA because it excludes—and thus necessarily compares Plaintiffs to—employees aged 40 to 54. According to FCA, because the ADEA protects employees aged 40 and over from age discrimination, 29 U.S.C. § 631(a), any class disparate impact claim must include employees aged 40 and older and thus the proposed class of 55 and older cannot support a disparate-impact claim. The Court disagrees.

A plaintiff bringing a disparate-*treatment* claim under the ADEA does not need to have a comparator under the age of 40. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996). For example, a 70-year-old plaintiff can say that she was fired because of her age and replaced by a 45-year-old. *See id*. And the Court sees no reason to treat disparate-impact claims differently. Indeed, the basis the Supreme Court provided in permitting 40-and-over comparators in disparate treatment cases equally supports permitting subgroups for disparate-impact claims. In *O'Connor*, the Supreme Court said that the ADEA prohibits discrimination because of someone's age, not because of someone's membership in a protected class. 517 U.S. at 312. The language of the ADEA "does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 and older." *Id*. Thus, "[t]he fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out *because of his age*." *Id*. (emphasis in original).

Resisting this conclusion, FCA asserts that the Sixth Circuit has definitively pronounced that subgroups are impermissible in ADEA-disparate-impact cases. (R. 39, PageID.1410–11.) In support, FCA relies on *Barnes v. GenCorp Inc.*, 896 F.2d 1457 (6th Cir. 1990) and *Smith v. Tennessee Valley Authority*, 924 F.2d 1059 (table), 1991 WL 11271 (6th Cir. 1991).

The Court disagrees that the Sixth Circuit has conclusively ruled on this issue. In *Barnes v. GenCorp Inc.*, 896 F.2d 1457 (6th Cir. 1990), the Sixth Circuit held that "[a]n employer violates ADEA when preference is given to a younger employee even if the younger employee is within the protected class of persons age 40-and-over." And though a footnote to that sentence read that "such sub-group analysis may not apply to discriminatory impact cases" *id*. at 1466 n. 12, the reasoning in *Barnes* is consistent with the Supreme Court's decision in *O'Connor*. A year later, in *Smith*, a panel of the Sixth Circuit held that "[a] plaintiff cannot succeed under a disparate impact theory by showing that younger members of the protected class were preferred over older members of the protected class." *Smith v. Tennessee Valley Authority*, 924 F.2d 1059 (table), 1991 WL 11271 at *3–4 (6th Cir. 1991). But, as Plaintiffs highlight, *Smith* is an unpublished case. Nor does *Smith* provide any analysis or explanation for why disparate impact and disparate treatment claims should be treated differently and therefore why subgroups should not be permitted. 1991 WL 11271 at *3–4. And *Barnes* did not hold that subgroups are not permissible in a disparate impact claim; it just flagged that it *may* not be.

And even though *O'Connor* and *Barnes* concerned disparate-*treatment* claims, permitting subgroups is consistent with the ADEA's purpose. As the Supreme Court explained, the ADEA does not ban discrimination because employees are aged 40 and older. *O'Connor*, 517 U.S. at 312. Instead, it bans age discrimination. Congress just cabined who was protected against age discrimination to those aged 40 and older. *See* 29 U.S.C. § 631(a) ("The prohibitions in this chapter

10

shall be limited to individuals who are at least 40 years of age"). And the Supreme Court permitted disparate-impact claims under the ADEA as a means, just like Title VII and other related statutes, of addressing "'the *consequences* of employment practices, not simply the motivation.'" *See Smith*, 544 U.S. at 240 (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971)) (emphasis in original). So if Plaintiffs can demonstrate that a policy has the consequence of discriminating against older employees, it should be of no legal significance whether those employees are aged 55 and older, or 60 or 70 and older. Disallowing such subgroups would undercut the purpose of the ADEA and leave older people without remedy merely because a policy does not affect employees from the age of 40. And the Court is not alone in finding such subgroups permissible. The Third Circuit recently found subgroups permissible relying on similar reasoning. *See Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61 (3d Cir. 2017). So has a court in this District. *See Bondurant v. Air Line Pilots Ass'n*, 718 F. Supp.2d 836, 843 (E.D. Mich. 2010). The Court agrees with the *Karlo* analysis as to why disparate-impact claims on behalf of subgroups should be actionable under the ADEA and does not believe it conflicts with any binding Sixth Circuit authority.

FCA argues that if a group of 55 and older employees could assert a disparate-impact claim, then such claims could rest on differences between two similarly-aged groups (e.g., 53 to 55 year olds as compared to 56 to 58 year olds).

*Barnes* seems to address this concern. The Sixth Circuit stated that "[i]f employees younger than a specific plaintiff have a statistically significant lower discharge rate, then it is obvious that the statistics—absent another explanation for the discharge—are probative of discrimination." In a footnote, it added

> Of course the closer in age a retained employee is to a plaintiff, the less plausible it
> is that the statistics show the plaintiff was discharged because of age. For example,

> if the defendants showed that most of the nondischarged employees were 47-years-old, then the discharge statistics would likely not be probative in the case of a 48-year-old plaintiff.

896 F.2d at 1467 n. 13. Thus, this concern is addressable when the court evaluates the probative value of the evidence of discriminatory impact.

FCA also asserts that permitting Plaintiffs to bring a disparate-impact claim that is not based on the impact to all those over 40 would be unfair to defendants.

This concern is unwarranted. In the later phases of this case, Plaintiffs will have a high burden of producing significant statistical data demonstrating an adverse impact. *See Hawkins v. Memphis Light Gas and Water*, 520 F. App'x 316, 322 (6th Cir. 2013). FCA will have the defense that the alleged disparate impact "is based on reasonable factors other than age" (RFOA). *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 404 (6th Cir. 2008). The RFOA inquiry is one of reasonableness, *Aldridge v. City of Memphis*, 404 F. App'x 29, 41 (6th Cir. 2010), and "[u]nlike the business necessity test [under Title VII's disparate-impact branch], which asks whether there are other ways for the employer to achieve its goals that do not result in a disparate impact on a protected class, the reasonableness inquiry [under the ADEA] includes no such requirement" *Smith*, 544 U.S. at 243.

The Court is also not persuaded by other circuits' rationale for why disparate impact claims should be treated differently than disparate treatment claims in the treatment of subgroups.

The Eighth Circuit holds that if disparate-impact claims "were cognizable under the statute, a plaintiff could bring a disparate-impact claim despite the fact that the statistical evidence indicated that an [employer's policy] had a very favorable impact upon the entire protected group of employees aged 40 and older, compared to those employees outside th[at] protected group. We do not believe that Congress could have intended such a result." *See E.E.O.C. v. McDonnell*

*Douglas Corp.*, 191 F.3d 948, 951 (8th Cir. 1999). But as the Supreme Court had earlier clarified in *O'Connor*, Congress sought to protect people against age discrimination, not protect people aged 40 and older. The Eighth Circuit also voiced concerns that allowing subgroups would require employers "to achieve statistical parity among the virtually infinite number of age subgroups in its work force," *Id*. But the ADEA does not require parity. In fact, for a plaintiff to be successful in a disparate-impact claim, she must allege statistics that demonstrate a *significant* disparate impact on an age group, not just *an* impact. *See Kovacevich*, 224 F.3d at 830*; see also Hawkins*, 520 F. App'x at 322.

The Court is also unpersuaded by the Second Circuit's rationale that allowing subgroups that allege a disparity in treatment among those 40 and older, would not support "the inference of discrimination that the disparate impact approach permits." *Lowe v. Commack Union Free School Dist.*, 886 F.2d 1364, 1373 (2d Cir. 1989). But courts weigh whether a disparate impact claim raises an inference of discrimination based on statistical data demonstrating a significant disparity based on age. *See Hawkins*, 520 F. App'x at 322. If a plaintiff can produce that for a subgroup of employees aged 60 and older, the Court sees no reason why that data's inferential value is any less than if the data was used for employees aged 40 and older.

The Court finds that Plaintiffs' proposed subgroup is permissible.

## C.

FCA next argues that Plaintiffs failed to exhaust their disparate-impact claim. In his EEOC complaint, Cerjanac charged that "[he] and similarly situated other co-workers, 55 years and over, have been routinely subjected to unwarranted lower PLM/Performance Ratings." (R. 39-2, PageID.1434.) Although the Court previously held that Cerjanec properly exhausted claims

focused on the PLM process as a whole for the entire class, (R. 32), FCA argues that his charge did not exhaust claims based on the forced-ranking requirement (R. 39, PageID.1414).

"As a general rule, a plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). Permitting an action "to encompass claims outside the reach of the EEOC charges would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role." *Younis*, 610 F.3d at 362.

FCA has not shown that Cerjanec's charge failed to exhaust the forced-ranking claims. In particular, FCA does not explain how Plaintiffs are bringing a new claim outside of the "reach" of Cerjanec's charge because they are now challenging a specific practice within the PLM process. Instead, it simply asserts that "to support an ADEA disparate impact claim, a plaintiff must have alleged to the EEOC a specific facially neutral policy." (R. 39, PageID.1413 (citing *Brown v. Ameriprise Fin. Servs., Inc.*, 707 F. Supp.2d 971, 976–77 (D. Minn. 2010).) But that does not explain why the charge is insufficient to exhaust plaintiffs' claim.

And *Brown* does nothing to help. *Brown* was concerned about charges not adequately putting the EEOC on notice that the employee was raising a disparate-impact claim as opposed to a disparate-treatment claim. 707 F. Supp.2d at 976–77. This Court previously distinguished *Brown* (R. 32, PageID.1253–54) and concluded that Cerjanec's charge put the EEOC on notice of a disparate-impact claim. As Plaintiffs are not bringing a new claim, but just a narrower version of a previous claim, the Court maintains that the disparate impact claim has been exhausted.

### D.

Next, FCA asserts that Plaintiffs will be unable to meet Federal Rule of Civil Procedure 23 requirements for a class action and therefore dismissal is warranted. (R. 39, PageID.1415 (citing

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).) Specifically, FCA asserts that Plaintiffs will be unable to meet the commonality, typicality, and adequacy-of-representation requirements. (R. 39, PageID.1415–21.)

"Although courts generally defer ruling on class certification until discovery on the certification issue is complete and the plaintiff has moved for class certification, nothing in Rule 23 prevents a defendant from attempting to preemptively deny certification on the grounds that the prerequisites of Rule 23(a) and (b) *can never be satisfied*." *Jimenez v. Allstate Indem. Co.*, No. 07-CV-14494, 2010 WL 3623176, at *2 (E.D. Mich. Sept. 15, 2010) on reconsideration in part, 765 F. Supp. 2d 986 (E.D. Mich. 2011) (emphasis added); *see also Schilling v. Kenton Cty., Ky.*, No. CIV.A. 10-143-DLB, 2011 WL 293759, at *4 (E.D. Ky. Jan. 27, 2011); *Phipps v. Wal-Mart Stores, Inc.*, No. 3:12-01009, 2016 WL 10649206, at *4 (M.D. Tenn. Nov. 18, 2016). When the defendant challenges class certification based solely on the allegations in the complaint, the standard is the same as that applied in deciding a motion to dismiss under Rule 12(b)(6). *Jimenez*, 2010 WL 3623176, at *3 (citing *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991). "Generally, then, the opposing party has the burden of 'demonstrating from the face of [the plaintiff's] complaint that it will be impossible to certify the classes alleged by the plaintiff[ ] regardless of the facts the plaintiff[ ] may be able to prove.'" *Id.* (quoting *Bryant*, 774 F.Supp. at 1495.)

The Court does not believe FCA has shown that Plaintiffs will never be able to satisfy the prerequisites of Rule 23. Instead, Plaintiffs' pleadings make it plausible that they will be able to do so.

The Court will begin with FCA's contention that under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), Plaintiffs will be unable to meet Rule 23's commonality requirement.

*Dukes* involved a proposed class action against Wal-Mart for alleged gender discrimination. *Id.* at 343. Specifically, the named plaintiffs alleged that Wal-Mart engaged in a "pattern or practice" of gender discrimination. *Id.* at 352. In seeking class certification, the named plaintiffs alleged that their claims had "questions of law or fact common to the class," as Wal-Mart had a policy of "allowing discretion by local supervisors over employment matters" and that discretion resulted in unlawful disparate impact on women employees. *Id.* at 344.

The Supreme Court held that the named plaintiffs had failed to establish commonality. As the plaintiffs were challenging "literally millions of employment decisions," commonality required them to identify some "glue holding the alleged reasons for all of those decisions together." *Id.* at 352. Absent that, a court could not determine whether the various claims for relief would "produce a common answer to the crucial questions *why I was disfavored*." *Id.* at 352 (emphasis in original). Such "glue" could be found if there was a company-wide procedure "that c[ould] be charged with bias" or if there was significant proof that the company "operated under a general policy of discrimination." *Id.* at 353 (internal citations omitted). And when the heart of the issue involved discretion, plaintiffs had to identify a "common mode of exercising discretion that pervades the entire company." *Id.* at 356. As the plaintiffs identified no "'specific employment practice'—much less one that ties all their 1.5 million claims together" their allegation of a "policy of discretion" did not suffice. *Id.* at 357.

Here, FCA argues that Plaintiffs, too, have alleged nothing more than a policy of discretion and therefore will be unable to satisfy the commonality standards articulated in *Dukes*. (R. 39, PID 1417.)[2] FCA further points to *Ross v. Lockheed Martin Corp.*, 267 F. Supp.3d 174 (D.D.C. 2017)

---

[2] FCA alleges that Plaintiffs' plead nothing more than "labels and conclusions" for their class claims. (*See* R. 39, PageID.1419.) While the pleadings under these claims are sparse, the

and asserts that, since a court failed to find commonality in a case with a similar calibration process to the one Plaintiffs challenge, a similar finding is warranted here.

Plaintiffs' allegations are significantly different from *Dukes* and do not warrant dismissal. In *Dukes*, the plaintiffs were alleging disparate treatment in pay and promotion decisions, and thus "literally millions of employment decisions." 564 U.S. at 352. The plaintiffs tried to tie their claims together by alleging that Wal-Mart had "a policy of discretion," as it gave managers broad discretion in how they made pay and promotion decisions. *Id.* at 343. Here, Plaintiffs' class claim is disparate impact—that FCA's policy of forced ranking causes older employees to receive lower scores. And they plead a "company-wide procedure that could be charged with bias"—the calibration process—as opposed to simply a generic policy of discretion. Thus, unlike in *Dukes*, Plaintiffs' pleadings create a plausible common answer to why the Plaintiffs were disfavored; namely, the discretion in forced ranking and the access to age information. Thus, the answer to whether the forced ranking and access to age data actually caused a disparate impact (that cannot be explained by a reasonable non-age factor) will resolve a central issue to the whole class.

Indeed, instead of *Dukes*, Plaintiffs' allegations are similar to *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482 (7th Cir. 2012), *abrogation on other grounds recognized by Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541 (7th Cir. 2016), where the Seventh Circuit found commonality. There, the plaintiffs challenged two company-wide policies at Merrill Lynch that, in tandem, created racial disparities among brokers. One was a "teaming" policy that gave brokers discretion to select other brokers to form teams. 672 F.3d at 488. Fewer African-American brokers were selected for teams. *Id.* at 489. The other was the "account-distribution"

_____

claims incorporate all prior paragraphs in the complaint, which provide sufficient factual support for their claims.

policy that reassigned clients of departing brokers by giving preference to brokers in teams. *Id*. at 488–89. Plaintiffs alleged that the policies influenced the exercise of discretion which, in turn, adversely affected the African-American brokers because they were on fewer teams. *Id.* at 489. The Seventh Circuit found that, because the teaming policy was implemented company-wide, the harm suffered by each plaintiff could be attributed to the same set of company-wide policies that permitted the discretion, such that the validity of those policies would be a common, and central, issue in each plaintiff's claim. *Id*.; *cf. In re Countrywide Fin. Corp. Mortg. Lending Practices Litigation*, 708 F.3d 704, 709 (6th Cir. 2013) ("Essential to *McReynolds*, and missing from the instant litigation, were companywide policies that *contributed* to the alleged disparate impact that arose from the delegation of discretion to individual brokers.") (emphasis added). Likewise, here, Plaintiffs point to one company-wide policy, the calibration/forced ranking, as the cause of the disparate impact, such that the "determination of [the contention's] truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Dukes*, 564 U.S. at 349–50.

FCA's second argument also fails to persuade. Although the plaintiffs in *Ross*, 267 F. Supp.3d at 182, challenged a similar calibration process to the one Plaintiffs challenge here, Plaintiffs' claims differ in an important way.[3] In *Ross*, the plaintiffs asserted that, as part of a performance appraisal system, a calibration process resulted in African-American employees receiving lower scores, which, in turn, affected employment opportunities and benefits. 267 F. Supp.3d at 182–84. Plaintiffs pointed to the "inadequate information" each manager had about each employee during this calibration process as the "flaw" causing the disparate impact. *Id*. at

---

[3] Plaintiffs object to FCA's use of this case because it involved the conditional certification of the class. (R. 53, PID 2003.) The court in *Ross* explicitly decided to apply a "full certification analysis under Rule 23(a) and (b)," however, and therefore its analysis is helpful in the present case. 267 F. Supp.3d at 192.

197. But, the court reasoned, "in order [to] make a plausible charge that a companywide evaluation method is infected with bias, it is clear that a plaintiff must provide some detail about *how* that examination operated in a biased way." *Id.* (internal quotations and citations omitted) (emphasis added). "[T]he contention that the companywide evaluation procedures often resulted in ratings that were poorly correlated with job performance, however plausible, does not supply an account of how those procedures themselves resulted in the racially disparate outcomes that Plaintiffs have observed in Lockheed's overall workforce." *Id.* at 198.

But here, Plaintiffs allege that the calibration process includes managers having access to employees' photos, and other information that can be a proxy for an employee's age. While a nuanced distinction, this information could explain how the procedure operated in a biased way because the information signaled a characteristic (someone's age) that can form the basis of unlawful discrimination.

Given that Plaintiffs have articulated a particular policy that involves information that could explain how the delegated discretion could cause a disparate impact on older workers, FCA has not met its burden of showing that Plaintiffs will be unable, after discovery, of meeting Rule 23 commonality requirements. *See Jimenez*, 2010 WL 3623176, at *2. Instead, the Court finds that Plaintiffs' pleadings make it plausible that they will be able to establish commonality. *See Iqbal*, 556 U.S. at 679, 683.

FCA also challenges the sufficiency of Plaintiffs' allegations that their claims are typical of those of the class. "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (internal quotations omitted). Plaintiffs argue that the challenged calibration process was applied to each

member of the class which resulted in discrimination. (R. 53, PID 2004.) Further, "the commonality and typicality requirements of Rule 23(a) tend to merge." *Dukes*, 564 U.S. at 349 n. 5. So the Court will likewise find that Plaintiffs' pleadings make it plausible that they will be able to establish typicality.

FCA lastly challenges the adequacy of the representation. (R. 39, PageID.1420–21 (citing Fed. R. Civ. P. 23(a)(4).) In particular, FCA argues that the proposed class "undoubtedly" includes individuals who themselves participated in the calibration process to determine other employees' scores. (R. 39, PID 1420–21.) And, "courts have found that a conflict exists where certain members participated in the very behavior that is being challenged." *King v. Enter. Rent-A-Car Co.*, 231 F.R.D. 255, 264 (E.D. Mich. 2004). This is concerning and, down the road, may call into question the viability of the class claims. But Plaintiffs respond that this is mere speculation and that FCA puts forth no evidence that the proposed class would present such a conflict. (R. 53, PID 2005.) Given the factual uncertainty at this stage, and the absence of any discovery, Plaintiffs' pleadings are sufficient and FCA has not shown that Plaintiffs will be unable to establish adequacy. *See In re Am. Med. Sys.*, 75 F.3d 1069, 1086 (6th Cir. 1996).

**E.**

FCA next challenges the sufficiency of Plaintiffs' individual claims of disparate treatment. (R. 39, PageID.1421–25.) FCA alleges that Cerjanec, Bravo, and Winfrey plead nothing more than "labels and conclusion" and a "formulaic recitation of the elements of a cause of action." (R. 39, PID 1423, 1426.)

Absent direct evidence of discrimination, a plaintiff asserting a claim of age discrimination must show—or at this stage allege facts that it make it plausible—that "(1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action;

(3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker." *Mickey v. Zeidler Tool & Die Co*., 516 F.3d 516, 521 (6th Cir. 2008) (citation omitted); *see also Richardson v. Wal-Mart Stores, Inc.*, 836 F.3d 698 (6th Cir. 2016) (applying ELCRA).[4]

Plaintiffs have pled facts supporting these four elements. Cerjanec, Bravo, and Winfrey each plead their age, that they was qualified for their position at FCA, that they received lower PLM scores because of their age, and that, based on those lower scores they suffered consequences such as termination, reduced compensation/bonuses and lesser opportunities for advancement. (*See* R. 37.) While their amended complaint is certainly not rife with factual allegations, the Court finds that Cerjanec, Bravo, and Winfrey have pled enough factual allegations to "nudge" their claims into plausibility. *See Iqbal*, 556 U.S. at 679, 683.

The same is not true of Modlin's constructive discharge claim.

Constructive discharge requires that a plaintiff plead that (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, (2) the employer did so with the intention of forcing the employee to quit, and (3) the employee actually quit. *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012) (internal quotations omitted). "Whether a reasonable person would have [felt] compelled to resign depends on the facts of each case," but the Sixth Circuit considers the following factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment

---

[4] The ADEA requires a plaintiff to demonstrate that age was the "but-for" cause of the adverse employment action. *Richardson*, 836 F.3d at 703. While the Sixth Circuit has yet to weigh in on this issue, Michigan courts have held that, under ELCRA, a plaintiff need only show that age was a motivating or determining factor in the employer's decision. *See id*.

on terms less favorable than the employee's former status. *Laster v. City of Kalamazoo*, 746 F.3d 713, 728 (6th Cir. 2014) (quoting *Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001).

Modlin has pled that he is 58, was qualified for his position, received lower scores because of his age, complained about the unlawful consideration of his age in his ratings to no avail, and that as a result of the unwarranted lower scores, he was compelled to quit. (R. 37, PID 1348–50.) But Modlin has not pled facts showing that the consequences from the alleged discrimination were so severe that a reasonable person would have felt compelled to resign. He only pleads that he was subject to illegal working conditions because of low PLM scores. But poor performance reviews are insufficient to establish intolerable working conditions. *See Henry v. Abbott Labs.*, 651 F. App'x 494, 507 (6th Cir. 2016). And even incorporating Modlin's earlier pleading that he received "reduced compensation and/or bonuses" as a result of low scores, (R. 37, PageID.1336), his pleadings are deficient. These allegations do not plead the creation of intolerable working conditions as perceived by a reasonable person. That Modlin was subjected to lower PLM scores because of his age is the very condition all potential plaintiffs are facing. Yet he is the only one who quit. Nor has Modlin pled that FCA gave him lower scores with the intent of forcing him to quit. The Court thus cannot find that Modlin pled a plausible claim of constructive discharge.

Lastly, FCA raises an additional exhaustion argument. (R. 39, PID 1425–27.)[5] Specifically, FCA asserts that Winfrey "failed to exhaust his administrative remedies with respect to his individual ADEA claim." (R. 39, PageID.1425.) And "to the extent Bravo's individual ADEA claim is based on conduct occurring prior to January 31, 2017, his ADEA claim is barred." (R. 39,

---

[5] At the hearing, FCA argued that all Plaintiffs failed to exhaust their individual claims because their EEOC charges only put the EEOC on notice of the disparate impact claim. FCA did not include that argument in their motion, so the Court will not consider it at this time.

PageID.1425–26.) As the Court previously ruled, it will not decide time-bar issues until some discovery has been conducted. (*See* R. 32.)

That leaves Winfrey. Plaintiffs argue that Winfrey can "piggy back" off Cerjanec, Bravo, and Modlin's charges as they "contain sufficient information to notify [FCA] of its potential liability." (R. 53, PageID.2009–10 (citing *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 194–95 (6th Cir. 1995)).) Luckily for Plaintiffs, FCA attached these charges to its motion. (R. 39-2.) And, as the documents are central to and explicitly referenced in the complaint, the Court can consider them. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Again, Cerjanec's charge reads

> I and similarly situated other co-workers, 55 years and over, have been routinely subjected to unwarranted lower PLM/Performance Ratings. Subsequently, due to these lower performance rating scores we have been subjected to different terms and conditions of employment including but not limited to: loss of promotional opportunities, loss of merit and bonus increases, and more favorable job assignments. We have also been subjected to disciplinary action and discharge. . . .
>
> I believe I and others have been subjected to different terms and conditions of employment, discipline and discharge, due to our age, 55 years and older, in violation of the Age Discrimination in Employment Act of 1967, as amended.

(R. 39-2, PageID.1434.)

The Court agrees with Plaintiffs that Winfrey can piggyback off Cerjanec's charge. "[A] charge will be adequate to support piggybacking under the single filing rule if it contains sufficient information to notify prospective defendants of their potential liability and permit the EEOC to attempt informal conciliation of the claims before a lawsuit if filed." *Howlett*, 49 F.3d at 195. "[W]here the grievances are alleged to arise throughout a large group, the lack of conciliation of one individual grievance does not necessarily mean that conciliation efforts would be unavailing if the EEOC and the employer were alerted to the broad scope of the claim." *Id*. Here, the EEOC and FCA were alerted to the broad scope of the claim: Cerjanec asserted that he and similarly-

situated others received lower PLM scores because of their age. (R. 39-2, PageID.1434.) Only a certain set of employees were subjected to the PLM process. (R. 37, PageID.1330.) Winfrey's claim is that he received lower PLM scores because of his age. That is also Modlin's claim. And Bravo's. The Court thus finds that Winfrey's claims are "substantially related" to Cerjanec's and that FCA and the EEOC were alerted that employees subject to the PLM process aged 55 and older were alleging that their PLM scores were lower as a result of their age. Winfrey can piggyback off the timely charge and his individual claims will not be dismissed.

## IV.

For the foregoing reasons, the Court will GRANT IN PART AND DENY IN PART FCA's motion to dismiss and/or motion to strike class and collection action allegations. Modlin's individual claims (Counts III and VIII) will be dismissed and the remainder of the case will proceed to discovery.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: August 6, 2018          U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 6, 2018.

s/Keisha Jackson
Case Manager